(51 P.3d 119)
No. 87,714

In The Matter of the Appeal of HCA HEALTH SERVICES, INC.,
d/b/a COLUMBIA WESLEY MEDICAL CENTER, from an Order of
the Division of Taxation on Assessment of Sales/Use Tax

Opinion filed August 16, 2002.

*Mark A. Burghart*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow,
L.L.C., of Topeka, for appellant.

*John Michael Hale*, of the Kansas Department of Revenue, for appellee.

Before RULON, C.J., LEWIS, J., and PADDOCK, S.J.

RULON, C.J.: Taxpayer HCA Health Services, Inc., appeals from the decision of the Board of Tax Appeals affirming the Department of Revenue's denial of a sales tax exemption under K.S.A. 74-50,115(b). The Taxpayer further appeals the Department's denial of an exemption for expenditures related to the purchase of leased equipment and challenges the interest rate applied to the delinquent taxes.

## Factual Background

The underlying circumstances of this case are not substantially in dispute. The Taxpayer owns and operates a medical complex in Wichita. Due to continuous changes and advancements in the medical field, the Taxpayer must frequently expend capital to upgrade and expand its existing facilities. The Taxpayer has claimed both sales tax and income tax exemptions for many of these expenditures.

When the Department conducted an income tax audit of the Taxpayer for the tax years of 1987-89, the Department assessed a delinquency against the Taxpayer, alleging the Taxpayer erroneously claimed an exemption under the enhanced Kansas Enterprise Zone Act, K.S.A. 74-50,113 et seq., when the Taxpayer failed to hire the requisite number of new employees. After several conferences and a related exchange of correspondence between the Taxpayer and the Department, a settlement compromise was reached. The Department allowed the Taxpayer to entirely deduct certain expenditures and to partially deduct other expenditures, yet prohibited any deduction for a third category of expenditures.

Thereafter, the Taxpayer continued to claim exemptions for expenditures similar to the types of expenditures ultimately approved in the settlement of the 1987-89 audit. Although the Taxpayer did not use the tax forms provided because it could not demonstrate the requisite increase in employment, the Department routinely approved the exemptions claimed by the Taxpayer during subsequent income tax audits. The parties do not dispute that the issue of job expansion was never raised in these audits and that the Tax-

payer's records reflect an increase in average annual employment each tax year until 1992.

In 1995, the Taxpayer applied for a sales tax exemption certificate for the construction of a birthing center. The Department denied the exemption. Reviewing the Department's action, the Secretary of Revenue's designee considered only whether the Taxpayer should be categorized as a "retail business" or as a "nonmanufacturing business," not whether the Taxpayer had increased its average annual employment. The Secretary's designee reversed the Department's assessment and approved the exemption certificate.

Subsequently, however, the Department conducted a sales tax audit and a compensating use tax audit of the Taxpayer. The sales tax audit covered a period from April 1, 1993, to March 31, 1996. The compensating use tax audit covered a period from November 1, 1992, to March 31, 1996. As a result of these audits, the Department assessed a $637,747 sales tax delinquency and a $153,253 compensating use tax delinquency against the Taxpayer, including taxes, penalties, and interest.

The assessments were appealed to the Secretary's designee, who affirmed the Department's assessments. Pending appeal to the Board of Tax Appeals, the Department and the Taxpayer settled several issues, and the Department agreed to waive the penalties on the delinquencies.

After hearing arguments concerning the remaining issues, the Board of Tax Appeals affirmed the decision of the Secretary's designee. Upon the Board's denial of the Taxpayer's petition for reconsideration, the Taxpayer appealed to this court.

## The Sales Tax Exemption

Primarily, the Taxpayer asserts that it is entitled to a sales tax exemption under K.S.A. 74-50,115(b). The material portion of this statute provides:

"(b) A nonmanufacturing business may be eligible for a sales tax exemption under the provisions of subsection (ee) of K.S.A. 1992 Supp. 79-3606a, and amendments thereto, if the nonmanufacturing business complies with the following requirements:

(1) A nonmanufacturing business shall provide documented evidence of job expansion involving the employment of at least five additional full-time employees."

According to the Department, the Taxpayer consistently lost employees during the tax years subject to the current audit. The Department argues that this loss of employment disqualifies the Taxpayer from the exemption allowed pursuant to K.S.A. 74-50,115(b).

Although an administrative agency charged with the enforcement of an administrative statute is to be accorded deference in its application of that statute, the construction of a statute remains a question of law, over which this court possesses unlimited review. See *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 536, 920 P.2d 947 (1996).

It is a fundamental maxim of statutory interpretation that effect must be given to the legislative intent expressed by the language of the statute when such intent may be ascertained. See *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998). Where the language of a statute is clear and not ambiguous, a court need not resort to rules of construction. See *In re Marriage of Rodriguez*, 266 Kan. 347, 352, 969 P.2d 880 (1998).

Considering the plain meaning of K.S.A. 74-50,115(b)(1), we conclude the legislature intended to provide businesses with the incentive to provide new employment by expanding the scope or size of their businesses. Subsection (b)(1) plainly premises a tax exemption upon the creation of additional full-time employment. The statute speaks of "job expansion" evidenced by the addition of five employees.

In determining whether a taxpayer had provided additional employment, the Department applies the method of calculating the number of qualified business facility employees articulated by K.S.A. 79-32,154(d)(1). While K.S.A. 74-50,115(b) does not specifically reference K.S.A. 79-32,154(d)(1), the application of this method to determine the number of employees retained by a taxpayer is consistent with the purpose of the exemption. K.S.A. 79-32,154(d)(1) establishes a method by which the average annual employment of the business may be quantified. Once the average number of employees in a given year is calculated, the average

numbers of successive years may be compared to determine whether a business has increased, maintained, or reduced employment.

Both the income tax exemption under K.S.A. 79-32,160a and the sales tax exemption of K.S.A. 74-50,115 are designed to stimulate state enterprise in order to increase employment within the state. Both statutes are encompassed by the Kansas Enterprise Zone Act. Therefore, as the legislature expressed no contrary intent, it is the duty of this court to construe the statutes within the Act as consistently as possible. See *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998). Thus, the Department appropriately used K.S.A. 79-32,154(d)(1) to determine whether the Taxpayer had added five employees as required by K.S.A. 74-50,115(b).

Determining the average number of annual employees under K.S.A. 79-32,154(d) for purposes of considering a taxpayer's compliance with K.S.A. 74-50,115(b), however, does not demand a construction under which a taxpayer's compliance with K.S.A. 79-32,160a(a) necessarily equates with compliance under K.S.A. 74-50,115(b).

In pertinent part, K.S.A. 79-32,160a(a) states:

"In the case of a taxpayer who meets the definition of a nonmanufacturing business in subsection (f) of K.S.A. 75-50,114 and amendments thereto, no credit shall be allowed under this section unless the number of qualified business facility employees, as determined under subsection (d) of K.S.A. 79-32,154, and amendments thereto, engaged or maintained in employment at the qualified business facility as a direct result of the investment by the taxpayer for the taxable year for which the credit is claimed equals or exceeds five."

Under the plain language of K.S.A. 79-32,160a(a), a taxpayer may qualify for an income tax exemption if the business expenditure subject to the proposed exemption either adds positions for employment or maintains positions of employment which would otherwise be lost. K.S.A. 74-50,115(b) reads quite differently, allowing a sales tax exemption only when the expenditure promotes an increase in employment by five additional employees.

Based upon the undisputed evidence that the number of employees retained by the Taxpayer in the years subject to audit has steadily declined, this court must reach the inevitable conclusion

that the Taxpayer has not complied with the mandates of K.S.A. 74-50,115(b). Even if the Taxpayer could demonstrate that its expenditures provided employment for new employees, an overall annual loss of employment forecloses any argument that the "additional" employment requirement of the exemption statute has been satisfied.

According to Webster's New Riverside University Dictionary 77 (1984), "addition," as used in this context, is "[t]he act or process of adding" or is "something added." "To add," in a similar context, means "to unite or join so as to increase in size, quantity, or scope" or means "to combine . . . to form a sum." Because words within a statute are generally to be accorded their normal meanings, see *Matjasich v. State Dept. of Human Resources*, 271 Kan. 246, 252, 21 P.3d 985 (2001), a taxpayer business which hires five new employees but dismisses ten existing employees has not added five employees within the meaning of K.S.A. 74-50,115(b).

As an alternative to its statutory construction argument, the Taxpayer presents a novel legal theory. It suggests that, if, under the plain requirements of the statute, it has failed to qualify for either exemption, the Department created an exception to the operation of the statutes. This argument is based upon an income tax audit conducted by the Department for the 1987-89 tax years. The Taxpayer contends that as a result of negotiations during this audit, the Department devised a methodology for allowing income tax exemptions for certain facility-related expenditures without considering the number of employees involved.

Because the Department negotiated the allowance of specified exemptions within the context of an audit, the Taxpayer's "methodology" sounds suspiciously like settlement negotiations between a delinquent taxpayer and the Department. As the product of settlement negotiations, the resulting "methodology" applies only to the taxes subject to the audit, not to prospective filings.

Moreover, to the extent that the Department intended to create the prospective application of an exception to the statutory requirements, as contended by the Taxpayer, the Department was completely devoid of the authority to implement such a sweeping exception. As an arm of the executive branch, the Department has

some discretion in how it enforces its legislative mandate. As a quasi-legislative entity, the Department is authorized to implement regulations designed to further its legislative mandate. However, the Department's authority does not extend beyond its legislative mandate; it cannot implement regulations which contravene the clear intent of legislation directing the Department's duties. See *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 459, 691 P.2d 1303 (1984).

Because any "methodology" devised by the Department for prospective application in filing sales tax exemptions under K.S.A. 74-50,115(b) is clearly outside the Department's authority, the Taxpayer could not reasonably rely upon such a "methodology" to claim tax exemptions.

The Taxpayer further contends that the Department waived its enforcement of the statutory exemption requirements by approving the exemptions during audits taken of the Taxpayer after it had adopted the Department's "methodology." Some of these audits covered the same tax years that are covered within the present audit. Thus, the Taypayer alleges that the Department is estopped from now taking an inconsistent position from that taken in the previous audits.

The statute dealing with taxpayer rights and privileges provides:

"(b) Any taxpayer who has received written advice from the department of revenue concerning the taxability of transactions shall be allowed to rely on such advice when filing tax returns. The department shall not maintain a position against a taxpayer which is inconsistent with a prior written opinion issued to the same taxpayer which has not been rescinded." K.S.A. 79-3268(b).

As previously discussed, the "methodology" offered by the Department in this case was in the nature of a settlement, not a tax opinion, formal or otherwise, concerning the taxability of the facility-related expenditures.

Clearly, the only written advice from the Department to the Taxpayer was a letter which was limited to resolving a tax dispute regarding income tax exemptions taken for 1987, 1988, and 1989. Nothing within the letter suggests that the Department was waiving the additional employee requirement. Therefore, the Department's current position is not inconsistent with the position es-

poused within the letter. As this letter represents the only written opinion within the record on this issue, the Taxpayer's reliance upon the Department's failure to raise the employee issue in subsequent audits cannot provide binding support for the Taxpayer's position.

"(b) A taxpayer may not rely upon a verbal opinion from the department of revenue. Only a written private letter ruling shall bind the department. Each taxpayer desiring a private letter ruling from the department shall request a ruling from the department in writing. The request shall state with specificity the circumstances and facts relating to the issue for which the ruling is sought. If insufficient facts are presented with a taxpayer's request for a ruling, a private letter ruling shall not be issued by the department." K.A.R. 92-19-59.

Even were this court to attach some significance to the audits which followed the creation of this "methodology" in which the Taxpayer claimed exemptions without objection from the Department, the Taxpayer fails to posit a basis for relief. With the sole exception of the denial of the exemption for the construction of the birthing center, which was ultimately reversed on appeal, each of the cited instances in which an exemption was claimed concerned an income tax exemption rather than a sales tax exemption.

Because a taxpayer may qualify for an income tax exemption while failing to qualify for a sales tax exemption, the probative value of these previous audits is marginal. Therefore, the Department is not estopped from assessing delinquent taxes against the Taxpayer for erroneously claiming an exemption under K.S.A. 74-50,115(b).

## Purchase of Leased Equipment

Next, the Taxpayer challenges the Department's decision to tax the purchase of previously leased equipment. The Taxpayer argues that it bought the remaining lease and that the purchase should be treated as a lease payment under K.A.R. 92-19-55. Contrarily, the Department contends that the lease term had expired at the time the Taxpayer decided to purchase the equipment and, therefore, the purchase was not a lease buy out, as the Taxpayer claims. Apparently, neither party argues that the Taxpayer was not justified in claiming an exemption for payments made under the lease of the equipment, originally.

According to K.A.R. 92-19-55, a sales tax is imposed upon the total gross receipts from rental or leased property. Thus, the regulations do not distinguish between lease payments and purchase payments for the purposes of determining the applicability of sales tax. K.A.R. 92-19-25b provides a certificate for exemption from retail sales tax to be presented to a vendor from a purchaser. Although neither party cites to authority, a basis for granting an exemption of sales tax upon leased property would presumably equally apply to the purchase of the property.

The record is devoid of any details regarding the lease exemption. During the evidentiary hearing before the Secretary's designee, certain questions established that the Taxpayer had previously leased some equipment, which the Department had exempted from sales tax. When the lease was about to terminate, the Taxpayer decided to purchase the equipment.

Generally speaking, a taxpayer claiming an exemption from tax bears the burden of establishing that he or she qualifies for an exemption. See *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 246, 891 P.2d 422 (1995). However, in the present case, we understand the Department essentially stipulated that the Taxpayer was granted a sales tax exemption upon the lease payments.

Accordingly, the sole issue before this court is whether the sales tax then extends to the purchase of previously leased property. As a specialized agency created to adjudicate tax disputes, the Board of Tax Appeals should be granted deference in the exercise of its field of expertise; however, this court may exercise independent review of the Board's interpretation of the law. See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999).

Because the regulations provide no distinction between lease payments or purchase payments for purposes of assessing sales tax, see K.A.R. 92-19-55, a qualified exemption certificate from sales tax on leased property is equally applicable to the purchase of the same property. Thus, the Board of Tax Appeals and the Secretary's designee erred in ruling that the Department's sales tax assessment on the Taxpayer's purchase of previously leased property was in error.

## Failure to Reduce Interest Rate

Finally, the Taxpayer contends the Department should have applied K.S.A. 79-3615(f) to reduce the interest rate to the underpayment rate specified by the federal tax code. K.S.A. 79-3615(f) provides:

"(f) Whenever the secretary or the secretary's designee determines that the failure of the taxpayer to comply with the provisions of subsections (b) and (c) of this section was due to reasonable causes, the secretary or the secretary's designee may waive or reduce any of the penalties and may reduce the interest rate to the underpayment rate prescribed and determined for the applicable period under section 6621 of the federal internal revenue code as in effect on January 1, 1994, upon making a record of the reasons therefor."

Clearly, whether a taxpayer's interest or penalties are to be reduced according to this section is within the discretion of the Secretary of Revenue or the Secretary's designee. In reviewing a ruling for abuse of discretion, this court reviews the record to determine if the judgment was arbitrary, fanciful or unreasonable. If a reasonable person in the position of the Secretary or the Secretary's designee could have reached a similar conclusion, this court will not reverse that determination. See *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 538-39, 957 P.2d 473 (1998).

Here, the Taxpayer inappropriately relied upon a settlement offer to formulate a "methodology" by which it sought to avoid the exemption requirements imposed by statute. Irrespective of whether this position was taken in good faith, the position is not a reasonable construction of the statute. Here, the Secretary's designee did not abuse its discretion in finding the Taxpayer's claim of an exemption was not reasonable and that a reduction in the interest rate was not appropriate.

The Taxpayer contends the Department had already found the claimed exemption was a reasonable error, as evidenced by the waiver of penalties. As such, the Taxpayer should also be entitled to an interest rate reduction. This argument fails.

First, the Department's reason for failing to impose penalties upon the Taxpayer is not contained within the record. It is not an inevitable conclusion that the Department waived the penalties because it believed the Taxpayer's position to be reasonable. Sec-

ond, a determination regarding the reduction of the interest rate must be made by the Secretary or the Secretary's designee, not by the Department which is prosecuting the tax delinquency. The Department's determination is irrelevant for this determination.

The record substantially supports the determination of the Secretary's designee. We are satisfied BOTA was correct in finding there was no abuse of discretion in that determination.

We reverse and remand for a recalculation of the tax related to the purchase of the previously leased medical equipment and affirm the remaining portions of the judgment.