(180 P.3d 604)
No. 97,332

IN THE MATTER OF THE APPEAL OF GODDARD, JERRY D. & PAT, FROM AN ORDER OF THE DIRECTOR OF TAXATION DENYING APPLICATION FOR EXEMPTION FROM AD VALOREM TAXATION IN CLOUD COUNTY, KANSAS.

Opinion filed April 4, 2008.

*Glenn H. Griffeth*, of Topeka, for appellant.

*Robert A. Walsh*, county attorney, for appellee.

Before RULON, C.J., MARQUARDT and GREENE, JJ.

GREENE, J.: Jerry and Pat Goddard (taxpayers) appeal an order of the State Board of Tax Appeals (BOTA) denying in large part their claim for an exemption from ad valorem tax on equipment utilized in their tree harvesting and sawmill operation pursuant to K.S.A. 2007 Supp. 79-201j(a), arguing that BOTA misconstrued and applied the operative statute and that its order was otherwise arbitrary and capricious. Concluding that taxpayers' sawmill operation is not "farming" for purposes of the exemption statute, we affirm BOTA.

### Factual and Procedural Background

Taxpayers harvest cottonwood trees and operate a sawmill in Cloud County for the sole purpose of cutting the harvested cottonwood logs into rough boards for shipment to a manufacturer of shipping pallets and wooden crates. When the Cloud County Appraiser sought to assess ad valorem taxes on their machinery and equipment, taxpayers filed their application for an exemption on their sawmill equipment and yarding tractor pursuant to 79-

201j(a), the statutory exemption for farm machinery and equipment.

In response to the application, the Cloud County Appraiser recommended no relief, stating:

"The applicant manufactures shipping pallets and crates for use primarily by farm equipment manufacturers. It would seem to the county that the applicant produces a product which can be used by a number of different businesses and is not in itself an agricultural product as defined in Kansas."

Upon request of BOTA for additional information to support the application, the taxpayers explained their operation as follows:

"The farming equipment in question is used exclusively in farming operations. Applicant's harvest trees growing on farms from farmers. The trees are exclusively cottonwood trees which are considered a hindrance to farmers as they draw excessive amounts of moisture from the soil and are harmful to crops growing near by. They also have a tendancy [sic] to fall into fields during storms. Cottonwood is not considered an acceptable wood for what would be considered normal construction purposes. They are transported to the sawmill where the trees are sawed into rough lumber. The lumber is then made into component parts for pallets and crates. It should be noted that Applicants do not assemble the pallets and crates which are exempt under K.S.A. 79-3606(m) . . . . The pallets and crates when assembled by third parties who purchase the raw lumber, are used for the shipment of farming equipment. They are not reused, and are consumed in the process.

"Applicants are not certain as to what 'product' the county is referring to. Cottonwood lumber has very limited applications as discussed above. The 'product' that Applicant's 'produce' is used purely for farming and ranching related uses. Applicant's further disagree with any inference that the product, *i.e.* rough lumber is not an agricultural product."

Following a hearing on the matter, BOTA held that the yarding tractor qualified for exemption, but that all other equipment associated with the sawmill did not. In so holding, BOTA stated:

"When examining what constitutes 'farming or ranching,' the Kansas Supreme Court has looked to other Kansas statutes as well as the dictionary definition of 'farming.' See *In re Tax Appeal of Lietz Construction Co.*, 273 Kan. 890, 905 [47 P.3d 1275] (2002). Based on the Court's conclusions and definitions of 'farming or ranching', the Board finds that the portion of the subject property (the 4x4 yarding tractor) which is used to harvest trees qualifies for exemption under K.S.A. 79-201j(a). The taxpayer indicates that Cottonwood trees are a nuisance to farmers as they draw excessive amounts of water from the soil and are harmful to crops growing nearby. By removing these trees, the taxpayer is improving the condition

of land and therefore increasing the productivity of the land. With respect to the remaining property, the Board finds that the sawing of trees into raw boards, based on client specifications is not farming under the definition used by the Kansas Supreme Court. *Id.* Therefore, the Board concludes that the request for exemption from ad valorem taxation be granted for the yarding tractor and is denied under K.S.A. 79-201j(a) for the remainder of the subject property."

The Goddards' motion for reconsideration was subsequently denied. The Goddards timely appeal.

### *Standards of Review*

The applicable standard for our review of an order of BOTA is governed by K.S.A. 77-621(c), which provides that we may grant relief if we determine:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

In an exemption case, we are mindful that, in general, taxation is the rule and exemption the exception. Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the party claiming exemption, and all doubts are to be resolved against exemption. *In re Tax Appeal of Lietz Constr. Co.*, 273 Kan. 890, 904-05, 47 P.3d 1275 (2002); *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs*, 245 Kan. 301, 304-05, 777 P.2d 843 (1989).

This appeal requires that we construe and apply a tax exemption statute, and the general rules for statutory construction are also applicable. The fundamental rule of statutory construction is that

the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007).

### *Did BOTA Misconstrue K.S.A. 2007 Supp. 79-201j(a) in Denying an Exemption to Taxpayers?*

Taxpayers argue that BOTA construed the applicable exemption statute too restrictively in contravention of legislative intent. K.S.A. 2007 Supp. 79-201j(a) provides:

"The following described property, to the extent specified by this section, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"(a) All farm machinery and equipment. The term 'farm machinery and equipment' means that personal property actually and regularly used in any farming or ranching operation. . . . The term 'farming or ranching operation' shall include the operation of a feedlot, the performing of farm or ranch work for hire and the planting, cultivating and harvesting of nursery or greenhouse products, or both, for sale or resale. The term 'farm machinery or equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as the terms are defined by K.S.A. 8-126 and amendments thereto."

The legislature has expressed its purpose for this exemption at K.S.A. 79-201i, which states:

"It is the purpose of K.S.A. 79-201j of this act to promote, stimulate and develop the general welfare, economic development and prosperity of the state of Kansas by fostering the growth and development of agricultural endeavors within the state. Agriculture, as conducted in farming and ranching operations throughout the state, is the primary basis of the Kansas economy. Communities, regions, and the state as a whole are materially dependent upon agricultural endeavors and derive substantial financial benefit from the success of Kansas agriculture. Farming and ranching operations require the investment of large sums of capital for the purpose of providing the land on which the operations are conducted, and the farm machinery and equipment necessary to satisfactorily carry out such endeavors. Because of agriculture's unique requirements of substantial capital investment, the property tax burden becomes a deterrent to such investment and,

in some instances, an encouragement to farm and ranch abandonment. Kansas, and all its citizens, will benefit from any improvement in the economic environment of Kansas agriculture. The exemption from the ad valorem property tax of farm machinery and equipment actually and regularly used in farming and ranching operations will constitute an incentive to agriculture and will improve the general economy of the state. Considering this state's heavy reliance on agriculture, the enhancement of agricultural endeavors is deemed to be a public purpose which will promote the general welfare of the state and be for the benefit of the people of the state."

Although taxpayers urge us to focus on the ultimate use of the rough boards produced by their sawmill, shipping pallets and wooden crates, our focus must be on the specific use of the machinery and equipment in question. There is no dispute that the taxpayers' equipment at issue is employed in a sawmill where the harvested trees are milled into rough boards pursuant to another manufacturer's specifications and then shipped to that manufacturer as a component part for the pallets and crates. Because we agree with BOTA that taxpayers' harvesting operation is farming, our task is to determine where the farming operation ends and a processing or manufacturing operation begins.

In performing this task, we seek the "ordinary meaning" of the term "farming," and this quest includes an examination of other statutes of interest. See *Lietz*, 273 Kan. at 906 (in determining ordinary meaning of farming, court examined other statutes). Of particular interest here is K.S.A. 17-5903(h), which defines "farming" for purposes of the corporate code in Kansas.

" 'Farming' means the cultivation of land for the production of agricultural crops, the raising of poultry, the production of eggs, the production of milk, the production of fruit or other horticultural crops, grazing or the production of livestock. *Farming does not include the production of timber, forest products*, nursery products or sod, and farming does not include a contract to provide spraying, harvesting or other farm services." (Emphasis added.)

We find this statute particularly instructive here, not only because the Supreme Court relied on it in the *Lietz* decision, but because it expressly *excludes* the production of timber and forest products from consideration as a farming endeavor.

On appeal, the taxpayers rely most heavily on the Supreme Court decision in *Lietz* and a decision of this court in *In re Tax Appeal*

*of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 909 P.2d 673 (1995). Neither case is helpful to the taxpayers' cause. In *Lietz*, the Supreme Court decided that earth moving equipment qualified for exemption as farm machinery because "soil conservation measures are generally understood to be an integral part of the cultivation of the soil in current farming practices." 273 Kan. at 906. Although Goddards' tree clearing operations may be akin to such practices, this has little bearing on exemption eligibility for their sawmill equipment. In *Masson,* a panel of this court held that the growing, cultivation, and selling of ornamental plants is an agricultural pursuit under K.S.A. 79-3606, stating that "common sense leads us to the conclusion the products grown by petitioner fall within the definition of an agricultural use as defined by K.S.A. 79-1476." 21 Kan. App. 2d at 869. Again, we see little similarity between the cultivation of ornamental plants and the operation of a sawmill.

We acknowledge that the question presented is a close one. Some authorities suggest that the term "farming" may sometimes include, in varying degrees, the preparation of the product for use. Webster's New Collegiate Dictionary 412 (1981). Other authorities suggest that "logging and lumbering solely for the purpose of securing lumber may, in some circumstances and to a limited extent, be incidental to agriculture." 3 Am. Jur. 2d, Agriculture § 1, pp. 935-36. Nevertheless, all such sources seem to equivocate with the language "in varying degrees" or "in some circumstances." Here, we must resolve such difficult questions against exemption based upon controlling Supreme Court authority. See, *e.g., Lietz,* 273 Kan. at 904.

In order to achieve a reasonable construction and application of the statute, we believe the "farming operation" ends with the harvesting of trees. When those trees are rough cut into boards for a particular manufacturing purpose, we believe the processing or manufacturing stage has begun and this is no longer "farming" as defined in the statute. If we were to conclude otherwise, it is not difficult to perceive applications of such a rule to absurd results. Consider, for example, a wheat farmer who might install and operate a milling operation to grind his wheat for use by a commercial flour wholesaler. Consider a corn farmer who might install a freeze-

drying operation to prepare the product for sale to consumers. Generally, milling operations and freeze-drying operations would be considered processing or manufacturing operations. Would such milling and freeze-drying equipment be exempt as farm machinery and equipment just because the operations are adjacent to or incidental to a farming operation? We think not. We recognize that our legislature has expressed strong support for farming pursuits in K.S.A. 79-201i, but we see no indication that it has intended to exempt machinery and equipment utilized in the processing or manufacturing of agricultural products.

We conclude that taxpayers' sawmill operation does not constitute farming and that the associated machinery and equipment are not exempt under K.S.A. 2007 Supp. 79-201j(a). A sawmill is simply not a farming operation. Rough-cut lumber, even in its early stages, must be regarded as a manufactured article, and a sawmill is a processing or manufacturing establishment. See *Stearns, etc., v. Thomas, Sheriff*, 295 Ky. 808, 810, 175 S.W.2d 505 (1943). BOTA did not err in so holding.

### Was BOTA's Decision Arbitrary or Capricious?

Taxpayers also argue that BOTA's decision was arbitrary and capricious because it apparently relied in part on the fact that taxpayers' sawmill cuts lumber "based upon client specifications," when this factor was specifically rejected as controlling by our Supreme Court in a similar case, citing *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 891 P.2d 422 (1995). We disagree.

In *Collingwood Grain*, the issue was construction and application of K.S.A. 79-3606(n), a statute creating a sales tax exemption for sales of property consumed in the production, manufacturing, processing, mining, drilling, refining, or compounding of tangible personal property. In holding that the process of blending, cleaning, drying, and aerating grain was "processing" for purposes of this statute, the court cited with apparent approval *National Lime and Stone Co. v. Kosydar*, 38 Ohio St. 2d 206, 207-09, 311 N.E. 2d 899 (1974), where the court stated that processing into proportions specified by purchasers did not affect the court's opinion as

to exemption for these purposes. See *Collingwood Grain*, 257 Kan. at 250-52.

We do not read *Collingwood Grain* or *National Lime and Stone* as applicable or helpful to the taxpayers here. There the question was one of determining what constituted "processing," and the courts held that performing to a client's specifications was irrelevant to the inquiry. In stark contrast, here we face the question of what constitutes a farming operation, and the fact that sawmill operations process lumber based on client specifications further demonstrates that the line between farming and processing or manufacturing was crossed by the lumbering activities at the sawmill. To the extent BOTA may have believed this a relevant factor to the inquiry, we agree. We perceive nothing arbitrary or capricious about BOTA's reliance on this fact in arriving at its decision not to exempt the machinery.

In summary, we agree with the Cloud County's brief on appeal in stating:

"What the Goddards are asking this court to do would make all products (and the equipment used to manufacture them) exempt from taxation as long as they are somehow used in the manufacturing, assembly, or shipping of agricultural products. This is not what the legislature intended. Taxation is the rule, exemption the exception."

Affirmed.