(192 P.3d 666)
No. 98,163

In The Matter of The Appeal of Genstler Eye Center & Clinic/Genstler Medical Care Facility From An Order of The Division of Taxation on Assessment of Sales Tax.

Opinion filed September 26, 2008.

*Mark A. Burghart*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, LLC, of Topeka, for appellant.

*Michael D. Burrichter*, of Kansas Department of Revenue, for appellee.

Before RULON, C.J., GREENE, J., and KNUDSON, S.J.

GREENE, J.: Genstler Eye Center and Clinic/Genstler Medical Care Facility appeals a final determination by the Board of Tax Appeals (BOTA) denying it an enterprise zone sales tax exemption under K.S.A. 79-3606(cc) on tangible personal property and services purchased in conjunction with the construction of a new facility for its business in Topeka. The appeal requires that we construe and apply the rather complex statutory enterprise zone tax exemption scheme to undisputed facts. Concluding that eligibility for the exemption has not been shown, we affirm BOTA and deny the exemption.

## Factual and Procedural Background

On August 1, 2002, Genstler filed a Request for Project Exemption in connection with the original construction of a new $2.2 million facility in Topeka for its business, which was identified as: "Medical business, ophthalmology and optometry; there would also be included eye exams, screening, cataract surgery, laser surgery, etc." The application designated the type of business as "commercial enterprise other than a manufacturing business or a retail business" but did not designate the facility as a "business headquarters." The project was under contract dated May 7, 2002, with an expected completion date of July 31, 2003.

Later in August 2002, the Department of Revenue, Office of Policy & Research, issued a letter opinion denying the requested exemption due to the Department's determination that the business was a retail business that was not expanding in a city with a population of 2,500 or less, or to a location outside a city in a county having a population of 10,000 or less. Genstler petitioned for administrative review of the decision, and after an informal conference procedure, the Secretary of Revenue issued a final determination that Genstler "is a 'retailer' as defined under the KEZA [Kansas Enterprise Zone Act] and not entitled to a sales tax exemption."

Genstler then appealed to BOTA, which heard oral arguments after the parties filed a joint stipulation of facts. BOTA concluded that Genstler failed to demonstrate eligibility for the exemption

based upon the same rationale cited by the Department. One member of BOTA dissented, however, concluding that Genstler's facility qualified as a "business headquarters" that created at least 20 new full-time positions and, thus, was eligible for the exemption. Genstler timely appeals BOTA's order.

### Standards of Review

We review orders of BOTA pursuant to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq. In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 694, 101 P.3d 1239 (2004). Where there has been no challenge to jurisdiction of the agency and the parties have stipulated to the material facts, we are authorized to grant relief if we determine that the agency has erroneously interpreted or applied the law (K.S.A. 77-621[c][4]), or otherwise acted in a manner that was unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(8).

Although we accord deference to BOTA in the construction of tax statutes within its expertise, the ultimate questions of statutory construction are legal issues over which we possess unlimited review. *In re Tax Appeal of HCA Health Services, Inc.*, 30 Kan. App. 2d 910, 51 P.3d 1119 (2002). The party challenging BOTA's interpretation of applicable law has the burden to prove error, but if BOTA's construction or application of that law is erroneous, we must take corrective steps. *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. 572, 575, 132 P.3d 950 (2006).

In Kansas, taxation is the rule and exemption is the exception. The burden of establishing an exemption from taxation is on the party claiming eligibility. Statutory exemption provisions are strictly construed against the party requesting exemption, and all doubts concerning exemption are to be resolved against the exemption and in favor of taxation. *In re Tax Exemption Application of Goddard*, 39 Kan. App. 2d 325, 180 P.3d 604 (2008).

### Overview of the Kansas Enterprise Zone Tax Exemption Scheme

Genstler seeks a sales tax exemption for tangible personal property and services purchased in connection with the construction of

its new facility, claiming eligibility under K.S.A. 79-3606(cc), which provides a tax exemption for:

"all sales of tangible personal property or services purchased for the purpose of and in conjunction with constructing, reconstructing, enlarging or remodeling a business or retail business which meets the requirements established in K.S.A. 74-50,115 and amendments thereto, and the sale and installation of machinery and equipment purchased for installation at any such business or retail business. . . . As used in this subsection, 'business' and 'retail business' have the meanings respectively ascribed thereto by K.S.A. 74-50,114 and amendments thereto." K.S.A. 79-3606(cc).

K.S.A. 74-50,115 establishes the criteria for exemption for each of three types of businesses: manufacturing, nonmanufacturing, and retail. Depending on the type of business, the statute then establishes new employment and/or geographical criteria for exemption eligibility. For example, if the business is categorized as manufacturing, the business may be eligible for exemption if it has relocated to a new city or county within Kansas and has employed at least two additional full-time employees. K.S.A. 74-50,115(a)(1) and (2).

In order to determine how a given taxpayer should be categorized within the three types of businesses, K.S.A. 74-50,114 provides definitional guidance. Of interest here are the following definitional subsections of that statute:

"(g) 'Nonmanufacturing business' means any commercial enterprise other than a manufacturing business or a retail business. *Nonmanufacturing business shall also include the business headquarters of an enterprise* . . . regardless of the firm's classification as a retail business if that facility for which the sales tax exemption certificate is issued facilitates the creation of at least 20 new full-time positions. . . .

. . . .

"(i) 'Retail business' means: (1) Any commercial enterprise primarily engaged in the sale at retail of goods or services taxable under the Kansas retailers' sales tax act; (2) any service provider set forth in K.S.A. 17-2707, and amendments thereto; (3) any bank, savings and loan or other lending institution; (4) any commercial enterprise whose primary business activity includes the sale of insurance; and (5) any commercial enterprise deriving its revenues directly from noncommercial customers in exchange for personal services such as, but not limited to, barber shops, beauty shops, photographic studios and funeral services." (Emphasis added.)

For purposes of applying subsection (i)(2), K.S.A. 17-2707 lists a host of professional service providers, including for our purposes here, optometrists, physicians, surgeons or doctors of medicine, and licensed physician assistants. K.S.A. 17-2707(b)(7), (9), and (24).

If a business is classified as nonmanufacturing in nature, K.S.A. 74-50,115(b)(1) makes that business eligible for the exemption if it provides documented evidence of five additional full-time employees. If a business is classified as retail in nature, K.S.A. 74-50,115(c)(1) and (2) make that business eligible for the exemption as follows:

"(1) A retail business shall provide documented evidence of job expansion involving the employment of at least two additional full-time employees; and

"(2)(A) such retail business locates or expands to a city having a population of 2,500 or less, as determined by the latest United States federal census, or (B) such retail business locates or expands prior to July 1, 2010, to a location outside a city in a county having a population of 10,000 or less, as determined by the latest United States federal census."

Here, Genstler argues its new facility qualifies either as a nonmanufacturing business employing at least five new persons, or as a retail business qualifying for nonmanufacturing treatment because its new facility is a business headquarters employing at least 20 new persons. For purposes of its second argument, K.S.A. 74-50,114(c) defines "business headquarters" as

"a facility where principal officers of the business are housed and from which direction, management or administrative support for transactions is provided for a business or division of a business or regional division of a business."

We must examine the undisputed facts against this statutory framework and determine whether BOTA erred in categorizing Genstler as a retail business whose new facility was not a business headquarters of an enterprise creating at least 20 new full-time positions.

### Should Genstler's Business Be Classified as Nonmanufacturing in Nature and Eligible for Exemption Based on the Employment of at least Five New Employees?

Genstler initially argues that BOTA erred in classifying it as a retail business because (1) it provides services not specifically enumerated by K.S.A. 17-2707; and (2) the Department has inconsistently interpreted and applied the statutory scheme, exempting purchases of property and services of businesses nearly identical to Genstler's. We reject both arguments.

#### Does Genstler Provide Services Not Enumerated by K.S.A. 17-2707?

To the extent a business provides professional services listed in K.S.A. 17-2707, it must be classified as a "retail business" pursuant to K.S.A. 74-50,115. Genstler argues that although K.S.A. 17-2707 lists optometrists, physicians, and physician assistants as those providing professional services, "Genstler is none of these service providers. Genstler is an eye surgery center."

BOTA rejected this argument, relying in part on Genstler's own characterization of its business in the exemption application. As noted above, that application described Genstler's business activities as "medical business, ophthalmology and optometry; there would also be included eye exams, screening, cataract surgery, laser surgery, etc."

We agree with BOTA that Genstler's own description of its services falls squarely within the categories of service providers listed in K.S.A. 17-2707. As we note above, K.S.A. 17-2707 lists a host of professional service providers, including for our purposes here, optometrists; physicians, surgeons or doctors of medicine; and licensed physician assistants. K.S.A. 17-2707(b)(7), (9), and (24).

The language of K.S.A. 74-50,114(i) and its incorporation of K.S.A. 17-2707 demonstrates an intent of the legislature to categorize a business by "service providers" rather than by the nature of services provided. We do not believe that a veterinarian could render his or her business eligible for exemption by denominating the business an "animal clinic" or "canine hospital," nor do we believe an attorney could render his or her business eligible for

exemption by denominating the business as an "accident clinic" or "legal service center." Similarly, we reject Genstler's attempt to focus on the comprehensive services that may be provided rather than the professional service providers to be employed therein. Additionally, and despite no such argument from the Department, we note that Genstler must be classified as a retail business by virtue of K.S.A. 74-50,114(i)(5) because it derives its revenues directly from noncommercial customers in exchange for personal services.

BOTA did not err in rejecting Genstler's argument that its activities were somehow beyond the listing of professional service providers in K.S.A. 17-2707.

### *Does an Inconsistent Application of the Statutory Scheme by the Department Require Equal Treatment of Genstler?*

In demonstrating inconsistent treatment of similar taxpayers, Genstler cites and relies solely on an opinion of an administrative law judge (ALJ) that determined that a "birthing center" constructed by HCA Medical Center in Wichita qualified for exemption because the business was nonmanufacturing rather than retail in nature. *In re Appeal of HCA Health Services of Kansas, Inc.,* Docket No. 95-3221, Director of Taxation, February 27, 1997. Genstler argues:

"There are no meaningful factual differences between an eye surgery center and a hospital which the Department admittedly still exempts as a nonmanufacturing business under the HCA decision. Much of the equipment that is used is the same for both types of facilities. In its request for exemption, Genstler also notes that 'Like all Hospitals and Ambulatory Surgery Centers we will have to go through the same process of certification for the State of Kansas and also the Medicare and Medicaid programs. We will have to pass all certification inspections that will be conducted by the Director of Medical Facilities and survey support.' An eye surgery center should be treated the same as a hospital birthing center or other medical care facility to whom the Department continues to grant the sales tax exemption."

BOTA rejected this argument because it concluded Genstler's business is factually distinct from a hospital.

"The Board finds no evidence to indicate that the subject property is an establishment with an organized medical staff of physicians, permanent facilities that

include inpatient beds, and medical services, including physician services, and continuous registered professional nursing services for not less than 24 hours of every day, to provide diagnosis and treatment for patients who have a variety of or specified medical conditions. Based thereon, the Board does not find that the Taxpayer satisfies the statutory requirements provided in K.S.A. 65-425(a) or (b) for either general or special hospital."

Whether or not these factual differences should have legal consequences, we conclude that BOTA was not obligated to follow the decision of the ALJ in the HCA exemption matter. The doctrine of stare decisis is inapplicable to decisions of administrative tribunals in Kansas. There is simply no rule that an administrative agency cannot refuse to follow a ruling of its predecessor in a different case. See *In re Appeal of K-Mart Corp.*, 238 Kan. 393, 396, 710 P.2d 1304 (1985). We note that a showing of widespread inconsistency in policy or regulatory/statutory application may, in some circumstances, establish arbitrary and capricious action by an agency. See, *e.g.*, *Hallmark Cards Inc. v. Kansas Dept. of Commerce & Housing*, 32 Kan. App. 2d 715, 88 P.3d 250 (2004). We do not believe that one prior decision of an ALJ within the Department of Revenue (that was apparently not appealed) demonstrates that BOTA has been arbitrary in a later case when reaching a different conclusion. Moreover, as conceded by counsel in oral argument, the taxpayer here has stopped short of claiming and proving any equal protection violation.

We hold that BOTA did not err in refusing to follow the prior decision of an ALJ in a different case, and its refusal to do so does not render its decision in this case arbitrary or capricious. We agree with BOTA in classifying Genstler as a retail business for purposes of KEZA application.

### Should Genstler's New Facility be Categorized as a Business Headquarters for an Enterprise and Eligible for Exemption Based on the Creation of at Least 20 New Full-time Positions?

Alternatively, Genstler argues that even if it must be initially classified as a retail business, its new facility was a business headquarters facilitating the creation of at least 20 new full-time posi-

tions, thus rendering it eligible for treatment as a nonmanufacturing business. BOTA characterized Genstler's new facility as "the Taxpayer's sole facility and includes the Taxpayer's total enterprise." BOTA then rejected Genstler's argument on this basis:

"The business headquarters exception, K.S.A. 74-50,114(g), allows the business headquarters of a retail business to be deemed a 'nonmanufacturing business.' To allow the retail expansion herein, where twenty-two (22) of the twenty-nine (29) new full-time positions created are performing functions statutorily defined as retail, to come under this exception would result in there being no meaningful distinction between a headquarters and a retail business. Every retail establishment expanding into a larger location that encompassed twenty (20) or more new full time positions and housing its principal officers could deem its entire retail facility as a business headquarters.

. . . .

"The Board finds that to allow a retail business to utilize the business headquarters exception to K.S.A. 75-50,114(g) would be inconsistent with the clear intent of the legislature as expressed through the language of the statutory scheme it enacted."

We begin with an examination of the statutory definition of business headquarters. As set forth above, the statute provides that a business headquarters is "a facility where principal officers of the business are housed and from which direction, management or administrative support for transactions is provided for a business or division of a business or regional division of a business." K.S.A. 74-50,114(c). Applying this language to the undisputed facts, one could easily conclude that Genstler's facility is a "business headquarters" because it houses the principal officers and provides from that facility all essential managerial direction and support for a business. We conclude, however, that the issue is not quite this simple.

First, we note a peculiar distinction between the statutory definition and the criteria within K.S.A. 74-50,114(g). In order for a retailer to be considered a nonmanufacturing business, the facility under construction or remodeling must be "the business headquarters *of an enterprise.*" (Emphasis added.) K.S.A. 74-50,114(g). What was intended by the addition of this phrase? The term "enterprise" is not defined by the statute. Obviously, we must conclude that the legislature intended here something beyond the mere

business headquarters as defined; the addition of the phrase "of an enterprise" compels us to conclude that the headquarters must be a facility "from which direction, management or administrative support" is provided for "an enterprise" or some aspects of the business *beyond that sole facility*. We can divine no other reason for the addition of the phrase "of an enterprise" to the defined "business headquarters." We cannot construe the statute in a manner that renders any aspect of the language to be meaningless. *In re Tax Protest of United Ag Services*, 37 Kan. App. 2d 902, 908, 159 P.3d 1050 (2007).

Second, we agree with BOTA in reasoning that the legislature could not have intended to so easily convert a retail establishment into a nonmanufacturing establishment. Genstler's argument would result in classifying nearly any retail stand-alone business as a nonmanufacturing business so long as 20 new positions were created. Thus, the construction or remodeling of any mom-and-pop retail business would qualify for treatment as a nonmanufacturing business so long as new positions were created. We doubt this was the intent of the legislature. We must construe the statutory scheme in a reasonable manner, giving due consideration to the spirit and obvious intent of the legislature despite any defect or shortcoming in the language employed. The legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results. *State v. Barnes*, 275 Kan. 364, Syl. ¶ 2, 64 P.3d 405 (2003).

Finally, even if we concede that the questions presented are close, we are inclined to affirm BOTA because of a need to strictly construe exemption statutes and because of our general deference to BOTA in matters within its expertise. We conclude BOTA did not err in its interpretation and application of the applicable statutory framework in denying a sales tax exemption to Genstler under K.S.A. 79-3606(cc).

Affirmed.