(342 P.3d 958)
No. 110,861

JOHN M. DENMAN OIL CO., INC., *Appellant*, and GARY and KAYLA BRIDWELL, d/b/a BLACK RAIN ENERGY, *Appellees*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*. GARY and KAYLA BRIDWELL, d/b/a BLACK RAIN ENERGY, *Petitioners*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Respondent*.

Opinion filed January 9, 2015.

*Thomas M. Rhoads*, of Glaves, Irby & Rhoads, of Wichita, for appellant.

*Dana Bradbury* and *Lane R. Palmateer*, of Kansas Corporation Commission, for appellee.

*Keith A. Brock*, of Anderson & Byrd, LLP, of Ottawa, for petitioners.

*Jeff Kennedy*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for *amicus curiae* Kansas Independent Oil and Gas Association.

*David E. Bengtson*, of Stinson Leonard Street LLP, of Wichita, for *amicus curiae* Eastern Kansas Oil & Gas Association.

Before GREEN, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: John M. Denman Oil Company has appealed a Kansas Corporation Commission (KCC) order that Denman Oil must plug 41 abandoned oil wells. Denman Oil contends that only one party may be held legally responsible for the wells under K.S.A.

55-179 and that since another party took over the mineral lease from Denman Oil, it is no longer responsible.

But K.S.A. 55-179(b) provides that "a person who is legally responsible shall include, but is not limited to, one or more" of several parties defined in that statute. And one of those who may be held responsible is "the original operator who . . . abandoned such well." There's no dispute that Denman Oil was the original operator who abandoned these wells, so the KCC's order requiring Denman Oil to plug them was proper.

FACTUAL AND PROCEDURAL BACKGROUND

The trail leading to this appeal begins in August 2007, when the KCC received a complaint about abandoned oil wells, spills, and debris on the 160-acre M.A. Alexander oil-and-gas lease in Chautauqua County. When the KCC inspected the leased ground in April 2008, it found 32 abandoned wells. The KCC found another 12 abandoned wells in November 2010; those wells had been covered by tall native grasses and missed on the first inspection.

The KCC's investigation eventually led it to order four parties—Denman Oil, Gary and Kayla Bridwell, and TSCH, LLC (a Florida limited-liability company)—to plug the wells.

Denman Oil operated the lease from at least 1939 until production ended in 1989. It did not plug the wells.

In 2008, Denman Oil assigned the lease to the Bridwells. The KCC entered into a compliance agreement with the Bridwells under which the Bridwells agreed to plug or begin production from at least two wells each month until all the wells were plugged or producing. The Bridwells returned three wells to production for a short time, but they didn't sell any oil or plug any wells.

Unsure whether the original lease was still valid, the Bridwells obtained new leases from the mineral owners in 2009. In 2010, they assigned the new leases to TSCH.

Before TSCH took over the leases, the KCC informed TSCH that if it took the lease assignment, it would be required to plug or produce from all the wells. TSCH got KCC authorization for injection into one well, ran pipe into two or three wells, and moved

two pump jacks onto the lease. But it did not produce from or plug any wells.

In June 2011, the KCC issued a show-cause order to Denman Oil, the Bridwells, and TSCH, ordering the parties to show cause why they should not be held responsible for plugging the wells and for paying the costs of investigating the matter. Denman Oil and the Bridwells participated in a hearing before the KCC on the issue; TSCH did not appear for that hearing.

Based on the hearing record, the KCC concluded that all 44 wells on the lease had been abandoned. The KCC also concluded that the abandoned wells "are causing or are likely to cause pollution of usable water or supply or loss of useable water" and that many of the wells "had rotted casing and high fluid levels." The KCC ordered Denman Oil to plug all of the wells except for the three that the Bridwells had briefly produced from. The KCC ordered the Bridwells to plug all 44 wells and TSCH to plug 32 wells (on the understanding that TSCH had only taken assignment of those wells). The KCC ordered that these parties be jointly and severally liable for plugging the wells in common among them. The KCC rejected Denman Oil's claim that it should not be held liable since it had transferred the leases to the Bridwells: "An assignment of the lease to [the] Bridwell[s] . . . some 19 years after production ceased on the lease does not change the fact that Denman abandoned the wells in 1989 and should have plugged them at that time."

Denman Oil and the Bridwells (but not TSCH) appealed to the Shawnee County District Court. The district court granted partial relief to the Bridwells, ordering that they were only responsible for plugging the three wells they had produced from. The district court affirmed the KCC's order that Denman Oil plug the remaining 41 wells, and Denman Oil has appealed to this court. The Bridwells did not appeal, and the KCC has not appealed the district court's limitations of the agency's original order to the Bridwells. On appeal, then, the only matter before us is Denman Oil's appeal of the KCC's order that Denman Oil plug 41 wells.

## STANDARDS OF REVIEW ON APPEAL

The KCC is an administrative agency, so we review its ruling based on the standards set out in the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. That act provides eight bases for a court to grant relief from an agency's action. Denman Oil contends that three of them apply: (1) that the KCC erroneously interpreted the law; (2) that the KCC's ruling was based on facts not supported by substantial evidence; and (3) that the KCC's action was arbitrary and capricious or otherwise unreasonable. See K.S.A. 2013 Supp. 77-621(c)(4), (7), (8). Denman Oil has the burden of showing KCC error, K.S.A. 2013 Supp. 77-621(a)(1), and we can set aside the KCC's order if Denman Oil shows error on any of the three points.

As is usually the case in administrative appeals, evidence was gathered in the agency proceeding, and the district court did not independently hear any evidence. Accordingly, we review even evidence-based issues without any required deference to the district court's decision. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010); *Muir v. Kansas Health Policy Authority*, 50 Kan. App. 2d 854, 856-57, 334 P.3d 876 (2014). There are no factual disputes of significance here, so this case ultimately comes down to a question of statutory interpretation. We also review those issues independently, without any required deference to the district court. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 954, 335 P.3d 1178 (2014).

## ANALYSIS

Kansas law has long protected the state's water resources. Since 1907, a statute has prohibited putting sewage or chemical waste into the state's waters. See K.S.A. 65-164; *Nunn v. Chemical Waste Management, Inc.*, 856 F.2d 1464, 1468 (10th Cir. 1988).

Unsurprisingly, oil and gas wells present a significant potential source for water pollution. So Kansas law also has long provided that these wells must be plugged when they are abandoned. An 1891 statute required plugging wells and made the owner guilty of a misdemeanor for failing to do so. See R.S. 1923, 55-116, 55-117; *State v. Foster*, 106 Kan. 852, 189 P. 953 (1920). Present law provides that the failure to plug a well is a *felony* offense. The statute

that does so, K.S.A. 55-156, provides that the operator "protect usable groundwater or surface water from pollution and from loss through downward drainage by plugging the well, in accordance with the rules and regulations adopted by" the KCC. The failure to comply with those regulations is a felony. K.S.A. 55-156. KCC regulations require operators to plug wells within 90 days after operations cease or file an application for temporary-abandonment authority. K.A.R. 82-3-111(a). Denman Oil does not claim that it ever obtained temporary-abandonment authority.

So there's no dispute here that the 41 wells Denman Oil had abandoned in 1989 and was ordered to plug were subject to the well-plugging statute and rule. What Denman Oil disputes is whether it may be required to plug the wells after it had turned them over to the Bridwells. Denman Oil argues that only one party may be held liable for plugging a well.

But that's contrary to the language found in K.S.A. 55-179(b), which everyone agrees is the applicable statute. It provides a list of parties who may be legally responsible and states that the responsible parties "shall include . . . *one or more*" of a list of parties that include both the last operator of the lease *and* the original lease operator who abandoned the well:

> "For the purposes of this section, a person who is legally responsible for the proper care and control of an abandoned well shall include, but is not limited to, one or more of the following: [1] Any operator of a waterflood or other pressure maintenance program deemed to be causing pollution or loss of usable water; [2] the current or last operator of the lease upon which such well is located, irrespective of whether such operator plugged or abandoned such well; [3] the original operator who plugged or abandoned such well; and [4] any person who without authorization tampers with or removes surface equipment or downhole equipment from an abandoned well."

Here, the first operator to abandon the wells was Denman Oil, which quit producing the wells in 1989 but didn't plug them.

Denman Oil argues that the singular reference in K.S.A. 55-179(b) to "a person who is legally responsible" signals that only one person or entity may be responsible. But the legislature provided a list—all referenced in the singular—of parties who may be responsible: "[a]ny operator" of a pressure-maintenance program

causing pollution; "the current or last operator" of the lease; "the original operator who . . . abandoned" the well; and "any person" who tampers with an abandoned well without authorization. Of those parties, the statute says that "one or more" may be responsible. In addition, the legislature has told us that "[w]ords importing the singular number . . . may be extended to several persons or things" unless doing so is "inconsistent with the manifest intent of the legislature." K.S.A. 77-201 *Third.* Here, reading K.S.A. 55-179(b) to allow more than one party to be responsible is consistent with both the language of the statute and with its obvious purpose of making sure that wells are plugged by the parties responsible for them, not at state expense.

Denman Oil also notes a reference to "a particular person" (singular) in K.S.A. 55-179(c), the statutory subsection that allows the KCC to issue a show-cause order when it "has reason to believe that a particular person is legally responsible" for an abandoned and leaking well. But once again, "[w]ords importing the singular number . . . may be extended to several persons or things," K.S.A. 77-201 *Third.* Doing so here makes sense based on the plain language of K.S.A. 55-179(b) that we have just discussed. See *Robinson v. Jones,* 119 Kan. 609, 614, 240 P. 957 (1925) (applying R.S. 1923, 77-201 and interpreting "owner" in a statute involving oil-and-gas royalties to mean "owners"). In context, K.S.A. 55-179(c) simply provides that the KCC may not issue a show-cause order until it has "reason to believe that a particular person is legally responsible" for an abandoned well; the provision does not limit the KCC's show-cause authority so that it must choose a single party to bear responsibility when issuing the initial show-cause order.

Denman Oil also suggests that since the statute never mentions joint and several liability, only one party may be held liable. But the statute makes clear that more than one party may be held responsible. When liability is joint and several, "each liable party is individually responsible for the entire obligation," although any party who pays may have a right of contribution or indemnification from other liable parties. Black's Law Dictionary 1054 (10th ed. 2014); see *Burlington N. & S.F.R. Co. v. United States,* 556 U.S.

599, 613-19, 129 S. Ct. 1870, 173 L. Ed. 2d 812 (2009) (approving a right of contribution between parties jointly and severally liable under a federal environmental-protection statute). Following the plain meaning of K.S.A. 55-179(b), which allows more than one party to be legally responsible, furthers the purpose of getting wells plugged and preventing further pollution. The legislature clearly has adopted serious tools to get wells plugged—the potential for felony criminal prosecutions and KCC authority both to order parties to plug wells and to plug wells itself and assess the costs.

As Denman Oil points out, the statute may be ambiguous about whether multiple responsible parties are jointly and severally liable; the statute does not specifically use those terms. But the KCC's interpretation, under which "legally responsible" parties are jointly and severally liable, is consistent with the statute's purpose and the KCC's authority.

This appeal does not consider whether Denman Oil may be entitled to reimbursement from either TSCH or the Bridwells. We note that the statute does not provide any authority for the KCC to apportion costs between various responsible parties. That's understandable: determining the respective duties of these parties might well require the determination of contractual relations between the parties to lease assignments, something that is not within the KCC's statutory jurisdiction. But the statute clearly authorizes the KCC to hold more than one party responsible, and the most sensible interpretation is that the parties would be jointly and severally liable. Interpreting the statute in this way supports the obvious statutory purpose of avoiding pollution to the waters of our state.

Two industry groups filed friend-of-the-court briefs. They agreed with another argument Denman Oil raised based on a 2008 KCC decision, *Quest Cherokee,* KCC Docket No. 07-CON-S155-CSHO. In *Quest Cherokee,* the KCC said that when a new operator took over a lease, it would generally be responsible for plugging an abandoned well from a prior lease if it physically operated the abandoned well or took responsibility for it. Denman Oil and the industry groups seek to apply *Quest Cherokee* here, but we do not find it controlling or persuasive in deciding Denman Oil's case.

First, Kansas courts do not defer to administrative agencies when interpreting a statute. *Golden Rule Ins. Co.*, 335 P.3d at 1188. Second, even an administrative agency is not bound by its prior decisions in contested cases; the doctrine of *stare decisis*—the principle that a judicial body should follow its past ruling when the same question arises again—normally doesn't apply to agencies. See *In re Tax Appeal of Gentsler Eye Center & Clinic*, 40 Kan. App. 2d 411, 419, 192 P.3d 666 (2008). So the *Quest Cherokee* decision is neither binding nor persuasive authority for this court. Moreover, no matter what *Quest Cherokee* may have held, K.S.A. 55-179(b) plainly makes it possible for multiple parties to be responsible for plugging an abandoned well—and it just as plainly makes Denman Oil a responsible party for plugging these wells.

Because Denman Oil is a responsible party under K.S.A. 55-179(b), the KCC's ruling was not based on any legal error.

Denman Oil also argues that the KCC's decision should be set aside either as not supported by substantial evidence or as arbitrary or unreasonable. As for substantial evidence, Denman Oil says that the evidence showed that TSCH had obtained all rights to the wells, so it should be held responsible. That's merely another way of arguing that the statute allows only one party to be responsible, an argument we have already rejected.

As for the claim of arbitrary or unreasonable action, Denman Oil argues that it's unreasonable to hold all of these parties jointly and severally responsible for plugging the wells. Denman Oil and the industry groups argue that the KCC should defer to the contractual arrangements between the parties and here require only that TSCH, which accepted the final lease assignment, be responsible for plugging the wells.

But such a rule would greatly hinder the KCC's ability to get wells plugged. If a leaseholder assigned its rights to a party financially unable to plug the wells, pollution could continue. That may well be the case here. Denman Oil notes that TSCH once committed to the KCC that it would either plug or return to production each of the abandoned wells. But TSCH not only has failed to do so, it did not participate in the KCC hearing or in this appeal either. In addition, the record shows that TSCH's license to operate wells

had expired before the KCC held its hearing; operators must annually demonstrate financial responsibility (through performance bonds or letters of credit) to maintain the operator's license. See K.S.A. 55-155(d).

Denman Oil has not shown any reason to set aside the KCC's order, which was affirmed by the district court. No issues are before us regarding the orders the KCC issued to the Bridwells and TSCH. We affirm the district court's judgment.