No. 111,389

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
BEUFORD W. RICKABAUGH a/k/a B.W. RICKABAUGH, Deceased.

SYLLABUS BY THE COURT

1.

The construction of a written instrument, including a will, presents a question of law when the document, analyzed in its entirety or to its four corners, contains no pertinent ambiguity. If a survey of the will's language makes the testator's intent clear, the document is unambiguous and should be enforced consistent with that intent.

2.

As a general matter, a will should be construed so as to avoid intestacy.

3.

Speculative inferences may not be linked or stacked to prove a factual assertion.

4.

As amended in 1972 and effective today, K.S.A. 59-617 operates as a self-contained provision that sets the length of the limitations period for submitting a will for probate and tolls that period upon the filing of a petition to do so. *In re Estate of Reed*, 157 Kan. 602, 612-13, 142 P.2d 824 (1943), construed a materially different version of K.S.A. 59-617 and is no longer precedential.

5.

The requirement in K.S.A. 59-2204 obligating a petitioner to cause a probate petition to be set for hearing does not include having the district court file a written order

stating the hearing date. A petitioner must secure a hearing date from the district court, effectively placing the petition on a calendar or docket.

6.

The canon of in pari materia calls for related statutes to be construed in a harmonious way, reconciling apparent conflicts, if possible, to effectuate legislative intent.

Appeal from Greenwood District Court; MICHAEL E. WARD, judge. Opinion filed September 11, 2015. Affirmed.

*Stanley R. Ausemus*, of Stanley R. Ausemus Chartered, of Emporia, and *Dan E. Turner* and *Phillip L. Turner*, of Topeka, for appellant Everett W. Rickabaugh.

*Rachael K. Pirner* and *Shane A. Rosson*, of Triplett, Woolf & Garretson, LLC, of Wichita, and *Thomas A. Krueger*, of Krueger & Williams, of Emporia, for appellees Angella Rickabaugh Glasgow and Lisa Rickabaugh.

Before LEBEN, P.J., HILL and ATCHESON, JJ.

ATCHESON, J.:  In 1992, Beuford Rickabaugh executed a will dividing his estate equally between his granddaughters and, thus, effectively disinheriting their father and his son Everett Rickabaugh. When Beuford died 20 years later and the will was presented for probate in the Greenwood County District Court, Everett launched a multifaceted attack aimed at keeping the document from being enforced—meaning he would inherit the estate, likely worth millions of dollars, through intestate succession. The district court rebuffed each of the procedural and substantive challenges from Everett and directed disbursement of Beuford's estate to Angella Glasgow and Lisa Rickabaugh, the granddaughters, in accordance with the will. Everett has appealed on a host of grounds.

2

Those points trade on varying degrees of infirm legal argument and present no sound reasons for upsetting the judgment in favor of Angella and Lisa. We, therefore, affirm.

The parties to the will contest are well familiar with the exhaustive district court record, including a lengthy evidentiary hearing. Much of that material hasn't any direct bearing on the issues on appeal. We dispense with any effort to catalogue those proceedings before turning to what Everett claims as error. Everett's attacks on the will may be broadly characterized as either substantive challenges based on the meaning of the document and its efficacy or procedural challenges arising from ostensible flaws in the probate action. Before turning to the legal arguments, we outline some pertinent factual and procedural signposts in this case. We then take up the substantive challenges to the will followed by the procedural challenges.

FACTUAL AND PROCEDURAL SIGNPOSTS

After a brief hospitalization, Beuford died on April 4, 2012. He was 84 years old. His surviving direct lineal descendants were Everett, Lisa, Angella, and two great-grandchildren. (The will and some court documents spell Angella's first name in the more common way as "Angela." The double-l spelling, however, is correct.)

Twelve days after Beuford's death, a lawyer for the executor of the estate filed a petition to probate the 1992 will and begin the administration of the estate. As the appellate record reflects, the lawyer representing the executor contacted the district magistrate judge's office and set a hearing on the petition for May 14. No written request for a hearing date was filed, and no written order was entered confirming the hearing date. The lawyer mailed copies of the petition, the will with two codicils, and the notice of hearing to Everett and furnished copies to other interested parties, including Lisa and Angella. The lawyer also had the notice published in a local newspaper on April 19, April 26, and May 3, 2012. A copy of the published notice was filed with the district court

3

days before the hearing. The record does not reflect a written order of the district court directing how and to whom notice should be given.

Everett did not appear at the hearing on May 14. The district magistrate judge admitted the will to probate.

On June 25, 2012, Everett filed a petition to set aside the order admitting the will to probate, asserting an array of reasons. Shortly afterward, the lawyer for the executor filed an affidavit confirming proper service and publication of notice—a filing that should have been made before the May 14 hearing. The lawyer then withdrew from the case.

Everett's motion marked the first court skirmish as he battled Angella and Lisa over whether Beuford's will ought to be probated and, if so, how it disbursed the estate assets. With legal teams in tow, both sides undertook discovery, filed briefs, and otherwise jockeyed to advance their views on the will's viability.

In June 2013, the district court entered a lengthy written order rejecting Everett's procedural challenges—with one exception. The district court found that the will was not self-proving and no evidence had been submitted at the May 14, 2012, hearing from the witnesses to the will. The district court, therefore, set aside the district magistrate's order admitting the will to probate and scheduled a new hearing. At the new hearing, the district court reviewed affidavits from the witnesses to the will and other evidence and ruled the will to have been proved. The district court then entered a new order admitting the will to probate, subject to Everett's remaining challenges.

The district court conducted a 2-day bench trial on those issues in mid-August 2013 and issued another lengthy written ruling in January 2014 rejecting Everett's contentions, finding the will to be enforceable, and directing the assets of the estate be

4

distributed to Lisa and Angella. As we have indicated, the bulk of the testimony and other evidence at trial bore on issues Everett has not pursued on appeal in light of the district court's adverse factual findings. Everett has timely appealed other substantive and procedural points.

LEGAL ANALYSIS

1. *Substantive Challenges to Beuford's Will*

A. *Construction of 1992 Will*

Beuford's 1992 will consists of four double-spaced, typewritten pages, the last of which is taken up with the signatures and declarations of Beuford and two witnesses. The will calls for the payment of Beuford's debts and expenses with the rest of his estate to go to his wife. Beuford's wife died before he did. In that circumstance, the will expressly provides that the estate be equally divided between his granddaughters Angella and Lisa, who were then preteens.

The will further provides that the estate assets should be held in trust for Angella and Lisa, and as each turns 30 years old, she should receive half the estate. If either of them were to die before turning 30 years old, her share of the estate would go to her children or if she had no children to her surviving sister. If both Angella and Lisa were to die before turning 30 years old without having children, Beuford names a veterinarian in Emporia as his sole heir. The balance of the will concerns administration of the trust for the benefit of Angella and Lisa and identifies an executor of the estate. The will makes no mention of Everett.

Beuford executed two codicils to the will, the first in 1997 and the second in 2001. The codicils expressly refer to and ratify the 1992 will and name substitute trustees and

5

executors. By the time Beuford died in 2012, Angella and Lisa had passed their 30th birthdays, so the will no longer imposed a trust on the estate assets. The will, however, did not contain a single, explicit description of how the estate should be handled or distributed if Beuford died after his granddaughters turned 30 years old.

Everett seizes on that omission to argue the will simply takes no account of that situation, and, therefore, the bequest must have been conditional on Beuford's dying before Angella and Lisa turned 30 years of age. In turn, Everett says because the condition failed—Beuford actually lived past both granddaughters' 30th birthdays—the bequest terminated, so the pertinent property (effectively the whole estate) should pass by intestate succession. If Beuford died intestate, his assets would go to Everett by operation of law as his only surviving child. K.S.A. 59-506. Angella and Lisa would receive nothing. Everett's position, however, runs counter to settled Kansas law.

The construction of a written instrument, including a will, presents a question of law when the document, analyzed in its entirety or to its four corners, contains no pertinent ambiguity. *In re Estate of Cline*, 258 Kan. 196, 199, 898 P.2d 643 (1995); *In re Estate of Shoemaker*, 22 Kan. App. 2d 444, 446, 917 P.2d 897 (1996). If a survey of the will's language makes the testator's intent clear, the document is unambiguous and should be enforced consistent with that intent. *In re Estate of Haneberg*, 270 Kan. 365, 371, 14 P.3d 1088 (2000); *In re Estate of Berryman*, 226 Kan. 116, 118-19, 595 P.2d 1120 (1979); *CoreFirst Bank & Trust v. Herrman*, No. 106,708, 2012 WL 3822858, at *2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 298 Kan. 1201 (2013). The court need not look to rules of construction or outside evidence. *In re Estate of Haneberg*, 270 Kan. at 371. Ultimately, "the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible[.]" 270 Kan. at 372. As a general matter, a will should be construed so as to avoid intestacy—hardly an astonishing proposition, since that's the purpose of a will. *Parsons v. Smith, Trustee*,

6

190 Kan. 569, 573, 376 P.2d 899 (1962); *In re Estate of Crenshaw*, 15 Kan. App. 2d 273, 279, 806 P.2d 1014 (1991).

Applying those standards, especially the principle calling for a review of the entire will to discern intent and meaning, the district court correctly rejected Everett's argument. Even if both granddaughters died before age 30 without children, Beuford declared that his estate should go to a named third party—the Emporia veterinarian—rather than to Everett. Beuford's desire to disinherit Everett couldn't have been too much more obvious. Beuford wanted to cut his son out of the will itself (by not mentioning him) and out of his estate (by providing all of the assets be directed to other persons).

Often wills contain provisions explicitly leaving nothing to an identified relative or acquaintance who otherwise might be considered a natural recipient of a portion of the testator's estate. Such a clause succinctly states that intention and dispels any notion the individual had been inadvertently overlooked in the drafting of the will, especially when the testator included bequests, large and small, to numerous people of significance to him or her. But that's not the situation here. And no affirmative statement of disinheritance is required. See *In re Estate of Randall*, 167 Kan. 62, 66-67, 204 P.2d 699 (1949). There is no ambiguity about what Beuford intended to bequeath Everett—in a word, nothing. See *In re Estate of Lester*, 191 Kan. 83, 87, 379 P.2d 275 (1963) (disinheritance of relative may be found by "necessary implication" where language of will is such that a contrary intent could not be supposed).

In the same vein, looking at the four corners of the will, there can be no real question Beuford intended that Angella and Lisa share equally his estate if they survived him. The will might have been more direct if it had a specific clause stating Beuford meant for his granddaughters to take free of the trust if he lived to see them celebrate their 30th birthdays. But the omission didn't sink Beuford's intent in a wallow of

7

ambiguity. There was neither a lack of clarity to the will nor an omission of a term critical to its operation if Beuford lived that long.

More to the point, as far as Everett's argument goes, the bequest was neither conditional nor did it become unenforceable in the absence of a specific clause encapsulating what the whole of the will established. The argument improperly blurs Beuford's testamentary intent that his granddaughters receive all of the estate assets to the exclusion of Everett with the trust Beuford imposed delaying his granddaughters' unrestricted access to the assets. The bequest was not conditional in the sense Angella and Lisa were to be divested of the estate property if Beuford lived past their 30th birthdays. Rather, in that circumstance, the limitation he imposed on their control of the estate property would become superfluous.

In other words, the creation of the trust and the detailed discussion of its operation in the will were not directions as to who should receive a portion of the estate but simply temporary restrictions on how the recipients—Angella and Lisa—could deal with the property should they be less than 30 years old. The intended recipients were indisputably apparent from the overall construction of the will. So if Angella and Lisa inherited under the will after they turned 30 years old, the trust would never become operational and, thus, could impose no condition or limitation on their use of their bequests.

Contrary to Everett's argument, nothing in the will suggests Beuford intended to divest Angella and Lisa of any inheritance should he still be alive after both of them turned 30 years old. Or, even more oddly, that he intended his will to be of no legal effect in that circumstance, meaning Everett would get everything by default. Endorsing Everett's position would contravene the rule of four-corners interpretation and ignore the presumption against intestacy. Moreover, intestacy in this case would not only violate that presumption, it would obliterate the clear intent of Beuford to leave everything to his living granddaughters to the exclusion of Everett. The point lacks merit.

8

Beuford did consult with a lawyer about changing the 1992 will after Angella and Lisa entered adulthood. The lawyer testified during the probate proceedings. According to the lawyer, as early as 2007, Beuford had discussed a new will that would have made comparatively modest bequests to Angella and Lisa, along with provisions covering the cost of college for their children. Beuford had also talked about a similarly modest bequest to Everett. The bulk of the estate ultimately would have gone to charity. The lawyer drafted another will and related trust documents along those lines in 2007 and delivered them to Beuford. She then prepared at least a couple of revised versions over the next several years. But Beuford never signed them and seemingly demonstrated no great urge to do so, suggesting some ambivalence about the changes and continued satisfaction with the 1992 will. The communications between Beuford and the lawyer have no legal significance in determining the validity or construction of the 1992 will. See K.S.A. 59-611; *In re Estate of Rinker*, 158 Kan. 406, 415, 147 P.2d 740 (1944) (To revoke a properly executed will, a later will must be "'valid and effective in every particular.'") (quoting *Hill v. Kennedy*, 134 Kan. 560, 564, 7 P.2d 88 [1932]). What Beuford might have been contemplating in talks with the lawyer had no bearing on his testamentary intent in executing the 1992 will 15 years earlier—a will he left intact as his duly executed testamentary directive.[1]

[1]Although Beuford's testamentary intent embodied in the 1992 will is clear, the will doesn't address what should happen if either or both granddaughters were to die before Beuford but after turning 30 years old. Those circumstances are not the facts of this case, and that hypothetical possibility doesn't diminish Beuford's intent. Rather, the will could have resulted in a lapsed bequest had the world taken such a turn. See *In re Estate of Haneberg*, 270 Kan. at 372 (lapse occurs when person named as beneficiary dies before testator); 80 Am. Jur. 2d Wills § 1408 (circumstances resulting in lapse of bequest entail death of individual beneficiary or dissolution of corporate beneficiary rendering testamentary gift impossible). The Kansas anti-lapse statute would have substituted the children of the granddaughters as beneficiaries had either of them predeceased Beuford after turning 30 years old. K.S.A. 59-615(a). But Everett might have had an argument for taking through intestate succession based on lapse had Angella and Lisa died without children after turning 30 years old, since the will had no applicable

9

residuary clause. See *In re Estate of Haneberg*, 270 Kan. at 373. Because Angella and Lisa survived Beuford there was no lapse. As we have explained, the bequests to them were not conditional—Beuford plainly intended his granddaughters to share his estate if they survived him.

B. *Superseding Will*

For his second substantive challenge on appeal, Everett tries to conjure up a phantom 1997 will he says negated the 1992 will. During the probate proceeding, Lisa testified she found an envelope with the phrase "1997 will" written on it among Beuford's papers. Lisa said she did not open the envelope and gave it to the lawyer representing the executor of the estate. The lawyer testified she did not recall receiving the envelope and was unaware of any superseding will.

To support his argument, Everett offers a chain of inferences that goes this way:

The envelope had "1997 will" written on it. The envelope must have had something in it, and that something must have been a will executed in 1997. The 1997 will would have revoked the 1992 will. Nobody has offered the 1997 will for probate. So Beuford died intestate.

But the links of the chain have been constructed of speculation rather than facts and evidence. And, as such, the argument reflects a classic example of impermissible inference stacking. See *State v. Rice*, 261 Kan. 567, 586, 932 P.2d 981 (1997) ("'Presumption and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference.'") (quoting *State v. Doyle*, 201 Kan. 469, 488, 441 P.2d 846 [1968]); *Estate of Vredenburg v. National Catastrophe Restoration, Inc.*, No. 90,974, 2005 WL 1561032, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 280 Kan. 982 (2005). The existence of a 1997 will cannot be assumed from testimony that an envelope bore writing identifying the unknown

10

contents to be such a document. (The evidence actually requires a preliminary inference the envelope contained a document and wasn't empty. But it may be reasonable to infer that a sealed envelope holds something.)

The envelope, of course, easily could have been mislabeled. Here, there is strong circumstantial evidence to that effect. As we have noted, Everett produced no direct evidence of a 1997 will—somebody who had seen it—or corroborating circumstantial evidence—somebody who had heard Beuford speak of it. Very possibly the envelope contained the 1997 codicil to the 1992 will, thereby accounting for the imprecise and technically inaccurate label. The 2001 codicil offers a compelling refutation of Everett's venture into nearly boundless theorizing. That codicil expressly reaffirmed Beuford's 1992 will and, rather conspicuously for these purposes, makes no mention of a 1997 will. So the existence of a 1997 will looks to be Everett's chimera or, in legal terms, an impermissible inference.

Even if it were permissible to infer the envelope contained a will Beuford executed in 1997 (a proposition we doubt), that alone would not carry the day for Everett. A later will does not automatically revoke an earlier will. Revocation requires either an explicit statement to that effect in the later will or so material a conflict in the terms of the two documents that the testator necessarily must have intended to revoke the earlier one. *Boucek v. Boucek*, 297 Kan. 865, 874-75, 305 P.3d 597 (2013); *In re Estate of Rinker*, 158 Kan. at 415-16. Wills executed at different times may be taken together to reflect the testator's intent if they are compatible rather than contradictory. 158 Kan. at 415-16. To say the elusive 1997 will included language revoking the 1992 will either explicitly or by implication of operation would impermissibly pyramid an inference on an inference. Surmising the precise content of a 1997 will nobody saw or heard about—a document the very existence of which is merely an inference—goes way too far. In turn, Everett's argument doesn't go nearly far enough to invalidate Beuford's 1992 will.

11

2. *Procedural Challenges to Probating Beuford's Will*

Everett asserts that deficient procedures in the district court kept Beuford's will from being timely or otherwise properly admitted for probate, preventing the district court from giving the document legal effect. Were that true, Beuford's estate would pass by intestate succession to the otherwise disinherited Everett. The district court turned aside those procedural challenges. Although the procedural arguments Everett has reprised on appeal have not been framed with precision, they share a common denominator—none of them warrants relief.

A. *Lack of Order Confirming Hearing Date Imposes No Bar*

Everett first contends the district court erred in allowing Beuford's will to be probated because the lawyer filing the petition on behalf of the executor never obtained an order from the district court confirming the May 14 hearing date. We perceive no disputed facts related to the contention. There was no order. The legal implications of the settled factual circumstances require interpretation of the probate code and present attendant questions of law. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (statutory interpretation question of law); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law). We answer those questions without any particular deference to the district court. *Arnett*, 290 Kan. at 47; *Estate of Belden*, 46 Kan. App. 2d at 258-59.

(1) *Filing Petition to Probate Will Sufficient to Avoid Time Bar*

Everett characterizes the absence of a separate written order establishing the hearing date for a petition to admit a will to probate as a jurisdictional defect negating the district court's authority to do anything. District courts are statutorily vested with subject matter jurisdiction over probate proceedings, and the absence of an order setting a

12

hearing date for any sort of petition would not strip away that jurisdiction. See K.S.A. 20-301; *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766-67, 241 P.3d 161 (2010). Everett's argument really goes to whether the petition properly presented the will for probate within 6 months after Beuford's death. As provided in K.S.A. 59-617, a will won't be enforced if it is *filed* in the district court more than 6 months after its author has died. As we discuss, the plain language of K.S.A. 59-617 undoes Everett's argument, since filing is sufficient to meet the deadline. The petition, of course, was filed less than 2 weeks after Beuford died.

Essentially, Everett argues that a petition to probate a will must satisfy the requirements of K.S.A. 59-2204 to be timely, and he says those requirements demand both the filing of the petition and a district court order confirming the hearing date for the petition. As we explain, he is wrong all the way around. Under the current probate code, K.S.A. 59-617 governs the timely filing of a petition to probate a will. Even if K.S.A. 59-2204 were applicable, it does not require a district court order confirming a hearing date.

As the foundation for his argument, Everett relies on *In re Estate of Reed*, 157 Kan. 602, 612-13, 142 P.2d 824, 831 (1943), and *In re Estate of Thompson*, 24 Kan. App. 2d 321, 323, 962 P.2d 564, *rev. denied* 263 Kan. 886 (1997). But *Reed* considered an earlier and materially different version of K.S.A. 59-617, so the case no longer has precedential weight. *Neal v. United States*, 516 U.S. 284, 295-96, 116 S. Ct. 763, 133 L. Ed. 2d 709 (1996) (force of precedent or stare decisis construing statute undercut when legislative body later materially changes statutory language); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 989 (7th Cir. 2001) (court should apply stare decisis and adhere to precedential decisions unless "subsequent statutory changes . . . have rendered them infirm"). And *Thompson* simply made a mechanical and, thus, mistaken application of *Reed* without mentioning or appreciating the intervening change in K.S.A. 59-617. *In re Estate of Thompson*, 24 Kan. App. 2d at 322-23.[2]

13

[2]The ruling in *Thompson*, endorsing *Reed*, does not itself impose a precedential barrier for us, since one panel of this court is not bound by a published decision of another panel. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010); *Osterhaus v. Toth*, 39 Kan. App. 2d 999, 1008, 187 P.3d 126 (2008), *aff'd* 291 Kan. 759, 249 P.3d 888 (2011).

To frame the proper interpretation of the present version of K.S.A. 59-617, we first outline the governing principles of statutory construction and then consider the language of that statute as an integrated part of the Kansas Probate Code. In construing a comprehensive statutory scheme such as the probate code, an appellate court must, as a first priority, strive to honor the legislative intent and purpose. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). The court should look initially to the words of the statutes to discern legislative intent. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725-26, 317 P.3d 70 (2014). If particular language is open to more than one reasonable interpretation, a court may consider the overall statutory purpose and favor a reading that comes to a "consistent, harmonious, and sensible" result effectuating that purpose. *In re Marriage of Traster*, 301 Kan. at 98; see *John M. Denman Oil Co., Inc. v. Kansas Corporation Comm'n*, 51 Kan. App. 2d 98, 104, 342 P.3d 958 (2015) (statute reasonably construed to impose joint and several liability on parties responsible for plugged or abandoned oil wells as "support[ing] the obvious statutory purpose of avoiding [water] pollution"). Judicial interpretation should not add something to the statutory language or take away something already there. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007). A court, of course, may also deploy those analytical tools to debunk a suggested interpretation of a statute as improbable, particularly when the suggestion would undermine legislative purpose.

The overarching purpose of probate law—and the Kansas Probate Code—is to promptly marshal the assets and liabilities of a dead person with the aim of paying any legitimate debts and distributing what's left in accordance with the wishes of that person as expressed in a properly executed will or, in the absence of a will, by a statutorily

14

prescribed formula to surviving heirs. The law, then, intends to provide an orderly and timely accounting of the deceased's financial affairs culminating in the disbursal of assets. See *In re Estate of Beason*, 248 Kan. 803, 811, 811 P.2d 848 (1991); *In re Estate of Thompson*, 164 Kan. 518, 190 P.2d 879 (1948). To accomplish that objective, the law places a premium on honoring the declared desire of the deceased as to how his or her net assets be distributed, whether to close relatives, dear acquaintances, or distant charities. *In re Estate of Blank*, 182 Kan. 426, 431, 320 P.2d 775 (1958) (intention of testator, as expressed in will, must prevail "'consistent with the rules of law'") (quoting *In re Estate of Schnack*, 155 Kan. 861, Syl. ¶ 2, 130 P.2d 591 [1942]). The process need not be contentious, although, as Everett reminds us in his briefing and by his actions, it may turn adversarial when the representative of an estate disputes asserted debts or when expectant legatees challenge a will they perceive as indecorously slighting them financially.

As provided in the probate code, any "application in a probate proceeding" for district court action must be made "by petition" unless presented orally during a hearing. K.S.A. 59-2201. In turn, a probate proceeding is "commenced . . . by filing a petition and causing it to be set for hearing." K.S.A. 59-2204. And "[w]hen a petition is filed, the court shall fix the time and place for the hearing on it." K.S.A. 59-2204. Under the probate code, a district court has a range of options in ordering how notice should be given to interested parties and others who potentially may have some stake in or claim against estate assets. K.S.A. 59-2208 (general notice provision requires that "the court shall order notice be given . . . in such manner and for such length of time as the court considers reasonable"); K.S.A. 59-2209 (governing notice by publication and by mail to designated parties when ordered by court or required by statute and directing publication for 3 consecutive weeks beginning within 10 days after "the order fixing the time and place of the hearing"). Those statutes form the procedural skeleton for handling probate petitions generally.

15

As we have said, a petition to probate a will must be filed within 6 months of the testator's death—a comparatively short limitations period intended to hasten the pace in settling estates and distributing assets.[3] The current version of K.S.A. 59-617 provides: "No will of a testator . . . shall be effectual to pass property unless a petition is filed for the probate of such will within six months after the death of the testator[.]" The statute, thus phrased in the negative, states when a will can no longer be enforced because it has been presented to the district court too late. The converse positive rule must likewise be true. That is, an otherwise proper will cannot be time barred if a petition to probate has been filed during the 6-month period. The plain meaning of K.S.A. 59-617 dispels Everett's argument that Beuford's will should not have been probated for want of a district court order setting or confirming a hearing date. To require more than filing would read something into K.S.A. 59-617 that can't be found in the statutory language.

[3]Over the past 75 years, the Kansas Legislature has regularly, if infrequently, shortened the time for submitting a will for probate. The probate code, adopted in 1939, cut the time from 3 years to 1 year. In 1972, the legislature reduced the time to 9 months. L. 1972, ch. 215, sec. 1. The time was trimmed to the current 6 months in 1985. L. 1985, ch. 191, sec. 8.

Before completing our excursion into history, we mention that until court unification in 1977, specially designated probate courts had exclusive original jurisdiction over probate matters. Unification disbanded various specialized courts with limited subject matter jurisdiction and consolidated jurisdiction in the district courts. See generally *In re Estate of Heiman*, 44 Kan. App. 2d at 766-68. Unification itself did not alter the state's substantive probate law, 44 Kan. App. 2d at 771, and has no particular bearing on the issues in this case.

Everett's reliance on *In re Estate of Reed* is misplaced. In that case, decided 4 years after the adoption of the probate code, the court construed the original version of K.S.A. 59-617 that contained different operative language. See G.S. 1941 Supp. 59-617; *In re Estate of Reed*, 157 Kan. at 606. The statute then stated: "No will of a testator . . . shall be effectual . . . *unless an application is made* for the probate of such will within one year after the death of the testator." (Emphasis added.) G.S. 1941 Supp. 59-617. In

16

what the decision acknowledged to be dicta, albeit on an issue the parties had presented, the court construed the original version of K.S.A. 59-617 in context with the procedural sections of the probate code. An "application," the specialized term used in K.S.A. 59-2201, refers to a petition initiating a probate proceeding. In turn, under K.S.A. 59-2204, a proceeding is "commenced . . . by filing a petition and causing it to be set for hearing." The *Reed* court, then, reasonably read G.S. 1941 Supp. 59-617 to require the commencement of a petition to admit a will to probate to satisfy the time limitation. 157 Kan. at 613. And commencement entails both filing a petition and setting it for hearing. So if K.S.A. 59-617 were now as it was in 1943, when the court decided *Reed*, Everett would have at least the start of a colorable argument. But it isn't, and he doesn't.

The legislature amended K.S.A. 59-617 in 1972 by replacing the requirement that "an application [be] made" to satisfy the time limitation for presenting a will for probate with a requirement that "a petition [be] filed." L. 1972, ch. 215, sec. 1. The amendment didn't simply swap synonymous terms; it materially altered the language. Courts presume legislatures intend purposeful change when they revise statutes. *Martin v. Kansas Parole Board*, 292 Kan. 336, 341, 255 P.3d 9 (2011); *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464, 228 P.3d 403 (2010). The amendment effectively negated the dicta in *Reed* and permitted a district court to consider a petition to probate a will so long as it had been filed within the statutory time limit. The current wording of K.S.A. 59-617 is plain and requires only the filing of the petition to avoid the time bar.

As amended in 1972 and effective today, K.S.A. 59-617 operates as a self-contained provision that sets the length of the limitations period for submitting a will for probate and tolls that period upon the filing of a petition to do so. To that extent, K.S.A. 59-617 is a specific statute distinguishing petitions to probate wills from other petitions generally governed by K.S.A. 59-2204. So in addition to ignoring the plain meaning of K.S.A. 59-617, Everett's argument elevates K.S.A. 59-2204, as a general statute, over

17

K.S.A. 59-617, a specific statute in contravention of a recognized rule of construction. *Merryfield v. Sullivan*, 301 Kan. 397, 398, 343 P.3d 515 (2015) (specific statute controls over general statute).

Although a court's assessment of the legislative wisdom behind a statute has no bearing on the construction to be given clear statutory language, see *Miller v. Johnson*, 295 Kan. 636, 646, 289 P.3d 1098 (2012), an interpretation advancing a sensible purpose does suggest a reasonable reading, *cf. State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) (court should construe statute "to avoid unreasonable or absurd results"); *Siruta v. Siruta*, 301 Kan. 757, 763, 348 P.3d 549 (2015) (statute should not be interpreted so part of it becomes surplusage). A degree of preferred treatment for petitions presenting wills for probate furthers the ultimate goal of distributing estate assets in conformity with a testator's desires expressed in a properly executed will. The limited preference in K.S.A. 59-617 does not otherwise significantly impede the efficient disposition of estates. The will, of course, must be presented to the district court within 6 months of a testator's death. In the run of cases, the recipients of the bequests would have financial incentives to press for prompt action on the petitions. If a petition languished—the situation in *Reed*—a district court could dismiss for a failure to prosecute upon fair notice to the petitioner and other interested parties. See *Frost v. Hardin*, 218 Kan. 260, 263, 543 P.2d 941 (1975) (district court has inherent authority to dismiss matter for failure to prosecute subject to any statutory requirements). In short, our reading of K.S.A. 59-617 conforms to the plain statutory language, creates no absurdity, and advances the purposes of the probate code.

In its time, *Reed* correctly construed K.S.A. 59-617 as part of the probate code, but its time passed in 1972. Unburdened by *Reed*, we hold K.S.A. 59-617 disposes of Everett's claim because the statute provides that filing a petition to probate a will suffices to avoid the 6-month time bar. Beuford's will was timely presented.[4]

18

[4]As we have indicated, *In re Estate of Thompson*, 24 Kan. App. 2d at 322-23, doesn't help Everett. Not to belabor the point, the brief panel opinion in *Thompson* simply applied the dicta in *Reed* construing G.S. 1941 Supp. 59-617 without considering the material change the legislature made to the statute with the 1972 amendment. The *Thompson* decision did not independently consider, construe, or apply the controlling version of K.S.A. 59-617, and it offered no rationale for the result apart from the authority of *Reed*. Because *Reed* no longer had precedential force precisely because of the statutory amendment, the decision in *Thompson* is likewise unpersuasive, even though it was issued well after the amendment.

(2) *Even if Petition Must Be Commenced under K.S.A. 59-2204 to Avoid Time Bar, Order Confirming Hearing Date Not Required*

Everett's claim fails for a second reason. Even if commencing a petition under K.S.A. 59-2204 were necessary to satisfy the 6-month deadline in K.S.A. 59-617, his position demands that the phrase "causing [the petition] to be set for hearing" be read to mean "filing a court order confirming a hearing date." Particularly in the context of the probate code, the two are not synonymous. Everett's argument, therefore, depends upon an impermissible judicial rewrite of K.S.A. 59-2204. Although another panel of this court recently endorsed that rewrite in considering a creditor's petition to open an estate, see *In re Estate of Clare*, No. 112,762, 51 Kan. App. 2d ___, ___ P.3d ___ (September 4, 2015), we take a different view.

The requirement in K.S.A. 59-2204 obligating a petitioner to cause a petition to be set for hearing does not include having the district court file a written order stating the hearing date. The court in *Reed*, 157 Kan. at 612, spoke of the requirement as having the petition "set down" for hearing—a phrase with an old fashioned sound but a distinct legal meaning. See Black's Law Dictionary 1580 (10th ed. 2014) ("set down" described as having 18th century origins and defined as "[t]o schedule . . . for trial or hearing, [usually] by making a docket entry"). Consistent with K.S.A. 59-2204, a petitioner must secure a hearing date from the district court, effectively placing the petition on a calendar or docket—something that doesn't require or result in an order. The district court

19

acknowledged that understanding to be the common practice among probate lawyers, at least in the Thirteenth Judicial District.

The practice also conformed to Kansas Supreme Court Rule 131 (2011 Kan. Ct. R. Annot. 224) governing notices of hearing in the district courts at the time the lawyer set the petition to probate Beuford's will for hearing. Under the rule, the party requesting the hearing was to give notice of the hearing date to all other parties unless the clerk, at the direction of the district court, furnished notice. The rule did not require the filing of a court order establishing or confirming the hearing date. Rule 131 has since been repealed, and the process for scheduling hearings has been incorporated into Kansas Supreme Court Rule 133 (2014 Kan. Ct. R. Annot. 248). Rule 133 does not specifically require a district court order confirming a hearing date.

What *does* requires an order of the district under the probate code is the way a petitioner must then give notice of the hearing, as set out in K.S.A. 59-2208. Had the legislature intended "commencing" a probate proceeding under K.S.A. 59-2204 to include the filing of both a petition and an order setting a hearing date, that's what the statute would have said. But it does not. Conversely, the language of K.S.A. 59-2208 expressly provides the district court "shall order notice to be given" in the manner it "considers reasonable" or as "required by law," thus incorporating notice by publication outlined in K.S.A. 59-2209. The legislature drew a distinction between setting a petition for hearing and obtaining a district court order directing the manner of giving notice.

The probate code, thus, establishes three distinct steps a petitioner must take to request judicial action:  filing of a petition outlining the action sought; "causing" the petition to be "set" for hearing; and then giving notice of the petition and hearing in the manner the district court orders. The statutory language does not require a distinct district court order establishing a hearing date—the hearing date will be incorporated into the notice a district court does order in the last step of the process. The order directing how

20

the petitioner must give notice, therefore, places the hearing date "of record" in the district court file. But an order is unnecessary to commence the proceeding under K.S.A. 59-2204.

All of that can be fairly and rather easily drawn from the language of K.S.A. 59-2204 and the procedures outlined in the probate code. In that respect, K.S.A. 59-2204 is unambiguous, so there is no reason to apply canons of construction to excavate comprehensible meaning from ambiguity. See *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1200-01, 339 P.3d 399 (2014) (no need to resort to canons of construction if statutory language clear, although court should still endeavor to avoid unreasonable interpretation). The *Clare* panel sought to settle a misperceived ambiguity in K.S.A. 59-2204 by unnecessarily invoking in pari materia for that purpose. See slip op. at 9. The canon of in pari materia calls for related statutes to be construed in a harmonious way, reconciling apparent conflicts, if possible, to effectuate legislative intent. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 919, 349 P.3d 469 (2015); *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013).

The *Clare* decision and Everett's argument functionally collapse the second and third steps in the probate process into a single requirement with troubling results. Under their approach, the probate code contains a technicality in the form of a written order confirming a hearing date the absence of which would prevent a creditor's petition to open an estate, as in *Clare*, or an executor's petition to probate a will from being timely presented. See K.S.A. 59-2239(1) (creditor's claim barred if estate not otherwise opened within 6 months of death); K.S.A. 59-2219 (content of petition for administration of estate); K.S.A. 59-2204 (commencement of probate petition).That would be true even if the petitioner otherwise secured a hearing date and then gave notice of the hearing in conformity with a court order entered after the 6-month limitation in K.S.A. 59-617 or in K.S.A. 59-2239(1).

21

As we have discussed, such a reading of the probate code undercuts the fundamental goal of giving legal effect to wills and avoiding intestate distribution of an estate whenever possible. Second, it creates an anomaly in which a petition could be barred because a district court fails to promptly enter an order confirming a hearing date. For example, were a petitioner to present an order to the district court confirming a hearing for a petition to probate a will several days before the 6-month deadline, the petition would nonetheless be time barred if the order didn't get signed and filed until the following week. The testator's will would become unenforceable because a proposed order sat unattended in a district court office.

Everett, thus, angles to evade Beuford's testamentary decision to disinherit him by reading into the probate code a requirement for an order that can't be found in the statutory language and then turning that phantom technicality into a potentially lethal trap. As Everett and the *Clare* panel would have it, a petitioner seeking to probate a will could be divested of that ability as the result of the district court's laxity in filing an order—something over which the petitioner has no direct control. Although the *Clare* decision dealt with a creditor's petition, its construction of K.S.A. 59-2204 would be equally applicable to a petition to probate a will if we are mistaken about how the 6-month time limitation in K.S.A. 59-617 operates.

We doubt the legislature intended to craft a procedural code in which a foreseeable bureaucratic foul-up carries such dire consequences. To the contrary, the legislature aimed to prevent that kind of catastrophe. Hence, the legislature chose contrasting statutory language in K.S.A. 59-2204 and K.S.A. 59-2208, reflective of the differing purposes of those statutes. Causing a petition to be set for hearing—commencing a probate proceeding— requires no order and effectively places *the initiation* of the proceeding within the petitioner's direct control. A district court's determination on how to give notice of the hearing on the petition requires the filing of a confirming order, a separate and later step intended to insure a fair hearing on *the disposition* of the petition.

22

The *Clare* panel, then, ostensibly reads in pari materia the requirement in K.S.A. 59-2204 to set a petition for hearing (that makes no mention of an order) with statutes in the probate code referring to orders memorializing district court directions on giving notice of the petition and the hearing. Slip op. at 11. But K.S.A. 59-2204 deals with the initiation of a probate proceeding, and the other statutes address the disposition of a proceeding—substantively different steps in the process.

Although the language in the procedural statutes is not perfectly symmetrical, the statutory scheme fails to support the idea the legislature intended a petitioner to obtain a district court order confirming a hearing date to commence a petition under K.S.A. 59-2204. The legislature would have clearly required an order if that were its intent, just as it actually did with regard to giving notice. See *Casco*, 283 Kan. 508, Syl. ¶ 6; *SW General, Inc. v. N.L.R.B.*, ___ F. 3d ___, 2015 WL 4666487, at *6 (D.C. Cir. 2015) ("'[W]e have repeatedly held that where different terms are used in a single piece of legislation, the court must presume that Congress intended the terms to have different meanings.'") (quoting *Vonage Holdings Corp. v. F.C.C.*, 489 F.3d 1232, 1240 [D.C. Cir. 2007]). Moreover, the *Clare* panel's holding would inevitably thwart a fundamental purpose of probate law—the payment of legitimate debts—without serving any particularly worthy objective. See *In re Marriage of Traster*, 301 Kan. at 98. Those principles of statutory interpretation hold far greater sway here than an awkward application of the in pari materia canon and should prevail.

Perhaps the best argument for an in pari materia reading of the procedural probate statutes derives from language in K.S.A. 59-2209, governing notice by publication. The statute kicks in when another probate statute specifically requires notice by publication. Part of K.S.A. 59-2209 provides that the first publication of the notice must be "made within 10 days after the order fixing the time and place of the hearing." The *Clare* panel cites that provision to support its idea that causing a petition to be set for hearing requires

the filing of a confirming district court order. And, in turn, that idea upends the meaning of K.S.A. 59-2204. Slip op. at 12.

The sounder in pari materia construction of the language in K.S.A. 59-2209 would look principally to K.S.A. 59-2208, the closely related statute governing notice generally. As provided in K.S.A. 59-2208, the district court must enter an order directing that notice be given as "required by law"—situations mandating publication under K.S.A. 59-2209—or as otherwise "deemed necessary." An order issued in conformity with K.S.A. 59-2208 is to set forth "such manner and . . . such length of time" required for appropriate notice. For notice by publication, that order necessarily must include the time and place for the hearing, since that time dictates the date of initial publication. So the order referred to K.S.A. 59-2209 as fixing the time and date presumably would be the one required by K.S.A. 59-2208. Applying the in pari materia canon that way reasonably reconciles the procedural provisions of the probate code and offers a harmonious reading of them. Moreover, the reconciliation avoids the thunderous effects of *Clare* in imputing a doubtful meaning to the causing-to-be-set-for-hearing language in K.S.A. 59-2204 and in preventing petitions from being decided for want of orders confirming hearing dates, a procedural obligation found nowhere in the code. Assuming the statutes need to be viewed using in pari materia at all, the *Clare* panel seems to look through the wrong end of the telescope.

For further support, the *Clare* panel draws on the analogy from *In re Estate of Reed* likening the commencement of civil actions under Chapter 60 to the commencement of probate proceedings. Slip op. at 6-8. The *Reed* court first pointed out Chapter 60 plaintiffs not only had to file petitions but also had to issue summonses for the defendants and then completed the analogy by concluding a probate petitioner had to file a petition and cause it to be set for hearing to commence a proceeding. *In re Estate of Reed*, 157 Kan. at 612-13. The court, however, merely invoked the statutory language of K.S.A. 59-2204 and never elaborated on the mechanics of causing a petition to be set for

24

hearing. We think the analogy simply meant to illustrate that a probate petitioner had to take a step beyond filing the petition—not that the step entailed securing an order of the district court. Just as a Chapter 60 plaintiff can issue a summons without a district court order, a probate petitioner can cause the petition to be set for hearing without an order. The *Clare* panel overextends the analogy to create a requirement in K.S.A. 59-2204 beyond the direct control of the petitioner.

In sum, the language of K.S.A. 59-2204 does not require the filing of a district court order confirming a hearing date on a petition to commence a probate proceeding. Both Everett and the *Clare* panel misconstrue the statute to say otherwise. The absence of such an order here did not render the executor's petition to probate Beuford's will untimely and the will unenforceable.

B. *Late Filing of Affidavit of Service Does Not Bar Will*

The lawyer for the executor of Beuford's estate did not file an affidavit confirming service of notice for the May 14, 2012, hearing to probate the will until after the hearing. The filing was indisputably delinquent. See K.S.A. 59-2211 (affidavit of service of notice to be filed before hearing). Everett argues the late filing of the affidavit of service prevents the will from being admitted for probate. The requested relief is extravagant, and the argument lacks merit. As with the first procedural point, we don't perceive any disputed facts related to this contention. The issue, therefore, presents a question of law.

The affidavit avers notice of the May 14 hearing was sent to Everett well before then. In its order of June 6, 2013, the district court made a factual finding that Everett received actual notice in advance of the May 14 hearing, although he did not appear personally or through counsel. Under those circumstances, Everett could not have been prejudiced, so we fail to see how he could claim any relief based on the tardy filing of the affidavit of service.

25

Giving Everett every benefit, however, we put all of that aside and assume he received no advance notice of the May 14 hearing. Our gratuitous assumption favoring Everett leaves the question of remedy. At best, Everett would be entitled to set aside the order from the May 14 hearing admitting Beuford's will and to insist on adequate notice of a new hearing to take up the petition. That remedy would afford Everett constitutional due process and protect his rights in the probate proceeding. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009); *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409-10, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 (2002). And it would impose strict compliance with the probate code. Everett would be entitled to no more. There is no legal or logical basis to say the petition to admit the will to probate should have been dismissed—and the will, thus, rendered ineffective—because interested parties had not received adequate notice of the hearing on the petition. See *In re Estate of Dumback*, 195 Kan. 26, 29, 402 P.2d 779 (1965) (defect in notice of hearing on petition to probate will did not deprive court of subject matter jurisdiction and, at most, made notice voidable).

Moreover, the district court did, in fact, order a new hearing on the petition because Beuford's will was not self-proving and the executor presented no evidence from the witnesses at the May 14 hearing. As a practical matter, Everett actually got as much relief as he could possibly have been entitled, albeit for reasons other than the dubious merits of his argument. In short, Everett has not shown any prejudice as a result of the late filing of the affidavit of service. Under no circumstance would he have been entitled to prevent Beuford's will from being probated because of the late affidavit. The district court ruled correctly, and we affirm that ruling.

26

C. *No Written Request for Hearing Date Required*

For the first time on appeal, Everett contends the petition to probate Beuford's will was improperly before the district court because the lawyer for the executor never filed a written request for a hearing date. We could reject the argument because Everett did not assert it in the district court. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). His position, however, is meritless. The probate code contains no such requirement. Even if it did, Everett cannot show he suffered any actual prejudice as a result. As the record amply demonstrates, the district court gave him a full and fair opportunity to assail the efficacy of Beuford's will. The probate code does not brook the subversion of a testator's otherwise valid will based on technicalities. See K.S.A. 59-2211 ("No defect in any notice or in its service, not affecting the substantial rights of the parties, shall invalidate any proceedings after such notice and the proof of its service have been approved by the court."); *Dumback*, 195 Kan. at 29.

D. *District Court's Order for New Hearing to Admit Will to Probate Does Not Result in Time Bar*

Finally, Everett fashions a strange argument based on K.S.A. 60-260(b) to the effect that the district court's ruling setting aside the original order admitting Beuford's will to probate somehow voided the petition itself—requiring the executor to file a new petition that would have been time barred. Everett cites no authority for this point. We aren't surprised, since the very recitation of the proposition suggests waywardness.

Under K.S.A. 59-2213, an interested party may act to set aside an order or judgment as provided in K.S.A. 60-260(b). In turn, K.S.A. 60-260(b) outlines five specific bases on which a court "may relieve a party . . . from a final judgment, order, or proceeding" and a sixth catch-all provision covering "any other reason" warranting relief. Everett's request to set aside the order admitting Beuford's will for probate following the May 14 hearing came within K.S.A. 59-2213 and was, therefore, governed by K.S.A. 60-

27

260(b). As the district court found, Everett correctly asserted Beuford's will was not self-proving and no evidence was presented at the May 14 hearing to otherwise prove its validity. The district court set aside the order and scheduled a new hearing.

Everett contends the district court invoked the wrong relief under K.S.A. 60-260(b). And that's where his argument ventures into legal fantasy. Everett says the petition to admit Beuford's will "merged" into the order entered following the May 14 hearing and, as a result, ceased to exist for any legal purpose. So, according to Everett, when the district court set aside that order, the executor of Beuford's estate had to file a second petition to admit the will to probate and that petition would have been outside the 6-month deadline in K.S.A. 59-617.

The lynchpin of Beuford's argument is the ostensible merger of the petition and the order, thereby treating the two as inextricably bound with respect to the remedy. But neither K.S.A. 60-260(b) nor its federal counterpart, Fed. R. Civ. P. 60, operates that way. A successful request for relief vacates the order or judgment but leaves the underlying case and the original pleadings intact. See *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631-32 (7th Cir. 2007) (under Rule 60[b][4] court must vacate judgment rather than dismiss action); *United States v. Certain Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1318 (11th Cir. 1997) (appellate court applied Rule 60[b][6] to vacate default judgment entered against property owners in forfeiture proceeding but did not order dismissal of action). The Kansas appellate courts regularly look to federal authority construing Fed. R. Civ. P. 60 for guidance. See *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 62-63, 523 P.2d 351 (1974); *In re Marriage of Mullokandova and Kikirov*, No. 108,601, 2013 WL 5422358, at *3 (Kan. App. 2013), *rev. denied* 299 Kan. 1269 (2014).

Accordingly, Everett has no legitimate claim to relief on the notion that the district court's ruling vacating the May 14 proceedings and the resulting order admitting Beuford's will to probate rendered the original petition a legal nullity. We reject the point.

CONCLUSION

Having thoroughly considered the arguments of the parties and the record on appeal, we find no sound legal grounds for disturbing the rulings of the district court admitting Beuford Rickabaugh's will to probate and ordering the distribution of the estate assets to Angella Glasgow and Lisa Rickabaugh in conformity with the will.

Affirmed.